## PINKERTON NATIONAL DETECTIVE AGENCY *v.* WALKER.

The dependents of a detective who is killed in the discharge of his duties at a place where he is ordered to be by his employer, by a thief whose flight he is attempting to prevent, are entitled to compensation under the provisions of the Georgia workmen's compensation act, in a case where the evidence shows that the assailant did not know the slain employee and neither did he know that the employee was a detective. The fact that the injury is the result of the wilful or criminal assault of a third person, and the employee is guilty of no misconduct, does not prevent the killing from being accidental within the meaning of the workmen's compensation act.

No. 3758. FEBRUARY 15, 1924.

Certiorari from Court of Appeals. 30. *Ga. App.* 91.

*Alston, Alston, Foster & Moise,* for plaintiff in error.

*Dorsey, Shelton & Dorsey,* contra.

RUSSELL, C. J. Mrs. Gladys Walker filed a claim before the Industrial Commission of Georgia, for compensation alleged to be due her by the Pinkerton National Detective Agency on account of the killing of her husband while in the employment of the latter. Upon the hearing before the chairman of the commission she was allowed the sum of $3000. An appeal was taken from this finding to the full commission, and the judgment of the single commissioner was affirmed. It appeared from the evidence upon the hearing, that the husband of the plaintiff was employed by the Pinkerton National Detective Agency at $4 per day, to guard the stock of Nat Kaiser Co. Inc., and to protect it as a watchman, arresting and detaining, if necessary, any person who might attempt to steal. A young man named DuPre, on December 15, came into the Kaiser establishment and asked that some diamond rings be shown to him, and while examining the handsomest ring made a dash with it to the front door. Walker seized him before he could pass through the doorway, and while pushing him back towards the rear of the store was shot by DuPre and instantly killed. DuPre, pursuing his flight through a near-by passageway into the Kimball House, also shot B. Graham West, who attempted to intercept his escape. It appeared from the evidence that DuPre and Walker had never met and were not acquainted with each other, nor had DuPre ever known West. Walker wore no uniform, nor did he carry any badge or insignia of any kind indicating that he was an arresting officer; and West was attired as a private citizen, not being an arresting officer but city comptroller of Atlanta. From the finding of the Georgia Industrial Commission the Pinkerton agency appealed to the superior court of Fulton county as provided by law, and all the evidence which was heard before the commission, having been transmitted to that court, was submitted to his honor, George L. Bell, judge of the Atlanta Circuit, for determination without the intervention of a jury. The investigation in the superior court resulted in the same finding as that returned by the commission. The case was then reviewed by the Court of Appeals, and is here upon the grant of a certiorari to that court, where the judgment of the superior court had been affirmed.

The only defense upon which the plaintiff in error relies or upon which it has insisted during the progress of this cause is whether the facts in this case place it within the exception contained in

subsection (d) of par. 8 of sec. 2 of the Georgia workmen's compensation act as passed in 1920 (Acts 1920, p. 169). Subsection (d) is as follows: "'Injury' and 'personal injury' shall mean only injury by accident arising out of and in the course of the employment, and shall not include a disease in any form, except where it results naturally and unavoidably from the accident, nor shall 'injury' and 'personal injury' include injury caused by a wilful act of a third person directed against an employee for reasons personal to such employee or because of his employment." The exception relied on is found in the concluding sentence of this subsection "injury caused by a wilful act of a third person directed against an employee for reasons personal to such employee or because of his employment." It is plain that it was the intention of the legislature to protect employers from liability in cases where injury resulted to the employee, even though he was in the course of his employment, because of personal ill-will towards the employee, "for reasons personal to [or against] such employee." It is not contended by the plaintiff in error that there is any evidence to show personal ill-will on the part of DuPre against Walker as an individual or because of any grudge against him personally. However, it is strenuously insisted by able counsel that, under the true meaning of the law, the undisputed facts show that Walker was killed in the course of his employment because of the employment. The argument in its strongest light is that if Walker had not been employed he would not have been killed.

We cannot assent to the proposition that the facts of the present case authorize any such construction of the language used in the exception contained in the words "because of his employment." The fundamental rule to be observed in construing statutes is to first determine the intention of the lawmakers in enacting the legislation under consideration. Certainly the legislature never intended to include within this exception, and thereby to debar from the benefits of the act, all cases where employees might be injured because they were employed at the time the injury was received. The purpose of the General Assembly can often be reached by a consideration of conditions prior to the new law. To use the thought of Blackstone, by looking to the prior condition of the law before the proposed enactment, the evil, and the remedy. It is a matter of history, of which the court may well take judicial cognizance,

that employees of corporations during strikes and other disorders have frequently been assaulted and sustained injuries more or less severe "because of such employment," and this exception was intended, not to mean that the employer was protected from liability where the employee was injured merely because he was employed by an employer in the general sense of that word, but rather where it was apparent that the injury was inflicted because the assailant of the employee wished to prevent the service of that particular employer, and the injury was inflicted, not because there was any feeling against the party who was assaulted and injured as an individual, but because of a determination that the particular service obnoxious to the assailant should be discontinued at whatever cost. The words "because of" in the exception are not synonymous with the words "caused by," as insisted by learned counsel for plaintiff in error, but are used in the same sense as the words "on account of." The word "the" instead of the article "a" is extremely significant, carrying with it undoubtedly the sense that the injury was inflicted, not on account of the employee's service generally, but to a particular service or employment known to the person who caused the injury with a view of stopping and preventing, not all service or any service of the employee, but the particular service in which the servant is employed at the time of the injury. In the argument of counsel it is insisted that the word "employment," used as the last word in the exception, is synonymous with "engagement," and it is insisted that as Walker was shot while *engaged* in the act of arresting DuPre, the company is relieved, because DuPre shot Walker while he was employed or engaged in the arrest. Counsel argues: "The statute means exactly what it says—'because of his employment.' That phrase was written in its full definition and meaning, and not only meant because Walker was hired by some one, but because of the character of his employment, the character of his work, or because of the act in which Walker was employed, or engaged, at the time of the shooting. We contend, aside from the question of personal malice, hatred, etc., that DuPre shot Walker because Walker was *employed in arresting* his flight from the store, and had grappled with him, and had struggled from the front to the rear of the store." It is true that "engaged" is one of the meanings of the word "employed," but in its more usual and general meaning "employee" and "employment"

cannot be disassociated from the thought of a contract. Running through the word "employ" is the thought that there has been an agreement on the part of one person to perform a certain service in return for a compensation to be paid by the employer. It is not usual for the question "what is your engagement?" to be used in the same sense as "what is your employment?" The former words might be equivalent to "what are you doing?" perhaps voluntarily and not in concert with any one else; but when you ask how a man is employed or what is his employment, the thought that he is under agreement bound to perform some service or services for another is predominant and paramount. The use of this word by the General Assembly was not, in our opinion, unintentional.

DuPre did not know that Walker was employed by any one, and he did not kill him because he had been employed by any one or because he was in *the* employment of the Pinkerton National Detective Agency. DuPre shot Walker just as he shortly thereafter shot West, in his effort to escape. He probably would have killed any other person had another instead of Walker attempted to defeat his intention to steal the diamond ring. It therefore cannot be said that Walker was shot because of *the* employment, even if perhaps the agency might have been relieved had the statute used the words "an employment" instead of *the* employment. The rule of evidence is well settled, that where a claimant seeks to recover compensation for injury inflicted upon an employee, the claimant makes his or her case by proof of the employment and the injury. If the employer asserts or relies upon exceptions, it is his duty, and upon him rests the burden, of proving the facts upon which the exceptions depend. In this case the employer, plaintiff in error, failed to prove, and in fact made no effort to prove, that DuPre killed Walker on account of any personal grudge. On the contrary the evidence tended to show that they had never met. Nor did it prove any circumstance indicating that the killing of Walker by DuPre was done with the intent to stop the employment; for, on the contrary, the evidence showed that the killing by DuPre was done solely and entirely to prevent the arrest, regardless of whether Walker was employed by any one or acting on his own initiative without being employed by any one. There can be no employment unless there is an employer; and so far as

appears from the record, DuPre did not know that Walker was employed by the Pinkerton Agency.

It is argued that the Georgia Legislature did not intend to entirely take away from employers the doctrine of assumed risk; that the risk of a detective is very great, and he is subject to wilful injury from third persons who are likely to commit injury by reason of the detective seeking to arrest said third persons. In view of what has been said, we cannot believe that it was the intention of the legislature to afford compensation to employees of all other classes, no matter how negligent or disinterested or lazy they may be in the service, and yet deny compensation to a courageous watchman, brave enough to risk his life in the performance of his duty, except in a case where the injury was the result of personal animosity existing between the assailant and the injured person, or where the attack was made merely and solely because he had accepted and was acting in an employment which was odious to the party who sought to inflict the injury. Under the provisions of subsection (d) of paragraph (8) of section 2 of the act of 1920 (Acts 1920, p. 167, 169), dependents of a slain employee are not entitled to compensation unless the death was the result of an accident. Is the wilful killing of a person by a bandit to escape arrest for a crime an accident? It is now well settled that the fact that the injury is the result of the wilful or criminal assault of a third person does not prevent the injury from being accidental within the meaning of the workmen's compensation acts. *Newsome v. Travelers Insurance Co.,* 143 *Ga.* 785 (85 S. E. 1035); Stasmas *v.* Rock Island Coal Mining Co., 80 Okla. 221 (195 Pac. 762, 15 A. L. R. 576); McNicol's case, 215 Mass. 497 (102 N. E. 697, L. R. A. 1916A, 309) Heitz *v.* Ruppert, 218 N. Y. 148 (112 N. E. 750, L. R. A. 1917A, 344; Western Indemnity Co. *v.* Pillsbury, 170 Cal. 686 (151 Pac. 698); Spang *v.* Broadway Brewing and Malting Co., 182 App. Div. 443 (169 N. Y. Supp. 574); Nevich *v.* D., L. & W. Ry. Co., 90 N. J. L. 228 (100 Atl. 234, L. R. A. 1917E, 847); Nisbet *v.* Rayne, 2 K. B. (Eng.) 687, 3 N. C. C. A. 268; Hinchuck *v.* Swift, 149 Minn. 1 (182 N. W. 622); Meuller *v.* Klingman (Ind. App.), 125 N. E. 464.

Was the killing for reasons personal to the employee? The reason which prompted the killing of the employee would have prompted the killing of any other person. The slayer killed the

deceased to effect his escape. He would for the same reason have killed any member of the public. His reason for slaying was not one applicable to the deceased alone, but to any one. Hinchuck *v.* Swift, supra. Nor was the injury inflicted upon the deceased because of his employment. It would have been inflicted with or without his being employed. The slayer did not know of his employment; so he could not have killed the deceased because of his employment. See supplement 4 to R. C. L., Workmen's Compensation; note to 15 A. L. R. 688.

The amendment to the workmen's compensation act, passed at the 1922 session of the legislature (Acts 1922, p. 185), which entirely eliminated the exception upon which the plaintiff in error in this case relies, is immaterial so far as the decision in the present case is concerned, but it suggests the thought that the sole purpose of the amendment was to clarify beyond question the meaning of the words which were eliminated, to prevent any further argument based upon the proposition that in all cases the employer is exempt from liability where the employee appears to be engaged in his employment.

As well said by Judge Luke in delivering the opinion in this case in behalf of the Court of Appeals, "It is not the letter of the Georgia workmen's compensation act that all injuries caused by the wilful act of third persons shall be excepted from its operation; and, from a reading of the letter of the act, we are safe in saying that the legislature did not intend to except all injuries caused by the wilful act of a third person. Had that been the intention, the qualifying phrases, 'for reasons personal to such employee,' and 'because of his employment,' would not have been used. It was intended that certain injuries, though inflicted by the wilful act of a third person, should come, for purposes of compensation, within the scope of the law. And if the injury here can be seen to have been a natural incident of the work, and to have been contemplated by a reasonable person as a result of the exposure occasioned by the nature of the employment, it may be said to have arisen out of the employment, and could be regarded as fairly within the contemplation of the parties at the time when the contract of employment was made. It is not to stretch the imagination nor to deal solely with the spirit of the act to say that injuries could be inflicted by the wilful act of a third person which would bring

them within the scope of the exceptions specified in the law." The act of 1922, supra, by striking the exception to which Judge Luke referred, merely clarified in legislation what had already been made plain by judicial construction. There was no error in the judgment of the Court of Appeals; and the judgment is

*Affirmed. All the Justices concur.*