32733. ÆTNA CASUALTY & SURETY CO. *et al.* v. FULMER.

DECIDED FEBRUARY 2, 1950. REHEARING DENIED MARCH 3, 1950.

*Martin, Snow & Grant,* for plaintiffs in error.
*Henry J. Heffernan,* contra.
SUTTON, C. J. Mrs. Margree Lucas Fulmer filed a claim for

compensation with the State Board of Workmen's Compensation against the Augusta School of Aviation and the Ætna Casualty and Surety Company, its insurance carrier, on account of the death of her husband, John H. Fulmer, which she claimed resulted from an airplane accident arising out of and in the course of his employment. The hearing director found for the widow claimant, and, on appeal, this award was approved by the full board and reaffirmed by a judge of the superior court, and the employer and insurance carrier excepted.

The evidence adduced at the hearing is, for the most part, uncontradicted, and from this evidence the following appears: Fulmer was a flight instructor at the Statesboro airport for the Augusta School of Aviation, and although operations at Statesboro were ordinarily in charge of a brother of the owner of the school, this brother was absent at the time of the accident, and Fulmer was in charge of operations and had authority to determine when to fly and to use the airplane which crashed and burned, causing his death around 11 p. m. on January 20, 1948. His authority was limited to the extent that he had no authority to use an airplane in violation of the rules and regulations of the school and of the CAA. About 7:30 p. m. on the evening of the accident, Fulmer and three companions, Clarence Stafford, Harry Tucker, and Harold Sapp, went to Cecil's Nightclub in Sapp's automobile. They remained at the nightclub for about 30 minutes, and while there they consumed, between the four of them, a pint of whisky. After leaving the nightclub they went to Sapp's home, obtained a fifth [of a gallon] of whisky, and drank about half of it, and returned to the nightclub, where they drank the rest of it. Stafford drank less than the others. Between 10 and 10:30 p.m. someone suggested that they go to the airport, which they did, in Sapp's automobile. There were two cases of beer in the automobile at the time. After their arrival at the airport Sapp remained in front of an office building at the airport and began working on his automobile, and Fulmer, Stafford, and Tucker took an airplane out of the hangar and taxied by the place where Sapp was working on his automobile. Sapp, noticed that Fulmer was in the pilot's seat, that Stafford was in the co-pilot's seat, and that Tucker was in the rear seat of the three-seated airplane. Stafford was a student of the

school, but had received no night flying instruction. The airport lights were not in operation, but lights were on in the hangar, and a high-powered light on the airplane, as well as its landing lights, were on. The airplane taxied across the field and then took off, went about a mile and then made a left turn, and on the way back to the field crashed and burned, some 30 or 45 seconds after taking off, about 3/4 of a mile from where Sapp was. After the crash Sapp immediately called an ambulance and the fire department and then went to the scene of the crash. Stafford was the only one he could recognize and he was still in the co-pilot's seat. At the time of the take-off, flying conditions, in the opinion of Sapp, were all right, although he did notice that the lights on the airplane were blurred at 100 to 150 feet in the air. If he had not had a date, he would have tried to persuade one of the others to forego a ride and he would have gone in the airplane. Sapp testified that none of the occupants of the airplane was staggering and that there was nothing wrong with them, prior to the take-off, and that he considered Fulmer a level-headed pilot. Harold Sapp was the only witness who testified to the events of the evening preceding the accident, and about the details of the accident. In regard to the purpose of the flight, the following questions and answers of this witness appear in the stenographic transcript of the evidence: "Q. Was Stafford a student out there too? A. Yes, sir. Q. Were they taking an instructional trip that night? No. Q. What was the purpose of the trip, from what they said? A. Oh, they were just going to fly around the field. Q. For pleasure? A. Yes, sir. Q. To get a thrill out of it? A. I guess so." Later, on cross-examination, the following appears: "Q. Now, I believe you testified that this was not—that this was a pleasure flight? A. That's right. Q. Wouldn't it have been possible for Fulmer to be taking Stafford or one of the boys up and have some understanding about it that you wouldn't know about? A. Well, no, what happened after they left me, I don't know. Q. You couldn't really say that it was exclusively a pleasure flight? A. On that night that was the intentions." Sapp's testimony was not contradicted in any respect, except there was testimony to the effect that a few minutes after the crash, the weather in Augusta, some distance away, was unsatisfactory

for flying, and that at midnight it was drizzling rain and foggy at the Statesboro airport. The evidence also includes certain rules and regulations of the CAA, prohibiting the flying of an airplane while under the influence of intoxicants, and prohibiting certain types of flying under certain types of weather conditions.

For an injury to be compensable under the provisions of the Workmen's Compensation Law it must be occasioned "by accident arising out of and in the course of the employment." Code, § 114-102. An accident arises out of the employment, within the meaning of the law, when it arises because of it, as when the employment is a contributing proximate cause, or where the accident and resultant injury can be seen to have followed as a natural incident of the work and to have been contemplated by a person reasonably familiar with the entire situation, and it arises in the course of the employment, within the meaning of the law, when it occurs within the period of the employment at a place where the employee reasonably may have been engaged in fulfilling the duties of his employment, or in doing something incidental thereto, and the burden of proof is upon the claimant to show the concurrent existence of the above conditions, that is, that it arose out of and in the course of employment. *Hughes* v. *Hartford Accident & Indemnity Co.*, 76 *Ga. App.* 785 (47 S. E. 2d, 143) ; *Harper* v. *National Traffic Guard Co.*, 73 *Ga. App.* 385, 387 (36 S. E. 2d, 842) ; *Aetna Casualty & Surety Co.* v. *Honea*, 71 *Ga. App.* 569 (31 S. E. 2d, 421) ; *New Amsterdam Casualty Co.* v. *Sumrell*, 30 *Ga. App.* 682 (118 S. E. 786). Findings of fact by the board, if supported by any competent evidence, are, in the absence of fraud, conclusive and binding on the courts. Code, § 114-710. Still, where there is no conflict in the evidence and but one legal conclusion can be reached therefrom, and that is, that the accident causing the injury to the claimant did not arise out of and in the course of the employment, an award by the board granting compensation must be set aside by the court on proper appeal. *Aetna Casualty & Surety Co.* v. *Honea*, supra; *Gay* v. *Aetna Casualty & Surety Co.*, 72 *Ga. App.* 122 (33 S. E. 2d, 109). An injury to an employee while on a trip for his own private pleasure is not compensable. *United States Fidelity & Guaranty Co.* v. *Skinner*, 188 *Ga.* 823 (5 S. E. 2d, 9). Where an employee is found dead

on account of injuries "in a place where he might reasonably be expected to be in the performance of his duties, the natural presumption arises that his death arose out of and in the course of his employment." *Standard Accident Ins. Co.* v. *Kiker*, 45 *Ga. App.* 706 (165 S. E. 850). Also, see *American Surety Co.* v. *Castleberry*, 57 *Ga. App.* 402 (195 S. E. 590). As will appear from the cases just above cited the presumption was applicable in the absence of evidence to the contrary. Ordinarily such a presumption disappears upon the introduction of evidence to the contrary. In this connection, see *Travelers Ins. Co.*, v. *Curry*, 76 *Ga. App.* 312, 313 (45 S. E. 2d, 453), where, under the evidence in that case, it was held that the facts overcame any presumption. An apt illustration of the effect of a natural presumption, and its disappearance in the face of evidence to the contrary, is afforded by the ruling on the presumption against suicide in the cases of *New York Life Ins. Co.* v. *Ittner*, 59 *Ga. App.* 89, 98 (200 S. E. 522), and *New York Life Ins. Co.* v. *Dutton*, 70 *Ga. App.* 783 (29 S. E. 2d, 638).

Under the evidence and the law applicable thereto, the claimant in this case failed to carry the burden of ultimately proving as a fact that her husband was killed by an accident arising out of and in the course of his employment. The only reasonable conclusion to be derived from the uncontradicted evidence is that Fulmer was killed in an airplane accident while piloting an airplane of his employer which he had authority to use at the time, if in compliance with certain flying rules and regulations, but which was being used solely for his own personal pleasure and that of his companions, and not while he was engaged in fulfilling the duties of his employment, or in doing anything incidental thereto. Under the evidence a finding for the employer and the insurer was demanded as a matter of law. It follows that the judge of the superior court erred in affirming the award granting compensation. The judge of the superior court is directed to remand the case to the State Board of Workmen's Compensation for further proof and consideration.

Pursuant to the act of the General Assembly, approved March 8, 1945 (Ga. L. 1945, p. 232, Code (Ann. Supp.), § 24-3501), requiring that the full court consider any case in which one of

'the judges of a division may dissent, this case was considered and decided by the court as a whole.

*Judgment reversed, with direction. Sutton, C. J., MacIntyre, P. J., Gardner and Worrill, JJ., concur. Felton and Townsend, JJ., dissent.*

FELTON and TOWNSEND, JJ., dissenting. We are of the opinion that the board was authorized to find in favor of compensation. There is no use to cite authority for the proposition that if there is any evidence authorizing the findings of the board this court cannot interfere. The majority base their ruling on the theory that the evidence demanded a finding that the trip was for pleasure exclusively, based on the testimony of witness Sapp. Sapp testified that from what was said 'the trip was a pleasure trip. In a court of law the answer would have been objectionable as a conclusion. The board had a right to rule and did rule on the validity of Sapp's conclusion. The board explicitly rejected the testimony and showed in the award that the testimony was a conclusion. In this view the board had ample evidence on which to base the award.