35758.   UNITED STATES FIDELITY & GUARANTY
CO. *et al. v.* CROFT.

DECIDED OCTOBER 18, 1955—REHEARING DENIED NOVEMBER 22, 1955.

*Whelchel & Whelchel,* for plaintiffs in error.

*Short & Slocumb, Robert H. Cranford,* contra.

QUILLIAN, J. Counsel for the employer in an excellent brief gives a logical analysis of the questions for decision: 1. Did the death of the employee occur at a place where the employee reasonably may have been in the performance of his duties? 2. Did it occur while he was fulfilling his duties or while he was engaged in doing something incidental thereto, reasonably necessary in the performance of his duties? 3. Was his employment a contributing proximate cause of his death?

This is but another way of saying that in order for the deceased's death to be compensable it must have been the proximate result of an accident arising out of and in the course of his employment.

It is held in *Carter* v. *Metropolitan Life Ins. Co., 47 Ga. App.* 367, 368 (2) (170 S. E. 535), "It has been held that acts of ministration by a servant unto himself, such as quenching his thirst, relieving his hunger, protecting himself from excessive cold, or while seeking shelter from a storm during working hours, where the employee intends to return to work after the storm passes, and numerous others, readily conceivable, performance of which while at work is reasonably necessary to his health and comfort, are incidents of his employment and acts of service therein . . . though in a sense they are personal to himself and only remotely and indirectly conducive to the object of his employment; and that an accidental injury sustained in the performance of such act is compensable as one incurred in the course of the employment and resulting therefrom." The deceased was, at the time he met his death performing an act reasonably necessary to his health and comfort, and such act was incidental and con-

ducive to the object of his employment. We are of the opinion that, since no means of making coffee was available on his employer's premises, that he did not, by repairing to the little drive-in for the purpose of obtaining it, remove himself from the scope of his employment.

The employer directs attention to the fact that while the deceased was in the "drive-in" he did not keep the premises he was employed to patrol within his immediate vision. The evidence does show that the deceased could not see the employer's lot or building from the position he occupied in the drive-in, and that this condition existed at the instant he was killed and for a brief period of time prior thereto. The employer frankly admitted that by opening a door that was very close to him, or by shifting his position to the front of the building which was only a few feet distant, the deceased could have commanded a view of the major portion if not all of the employer's premises. It is the position of the employer that the failure of the employee to keep the premises of the employer constantly in view, constituted an abandonment of his employment.

This contention is ingeniously presented and worthy of thorough consideration.

In this connection it must be kept in mind that the deceased was only required to exercise reasonable diligence in the discharge of his duties, such as an ordinarily prudent person would employ in similar circumstances.

There are instances where momentary inattention on the part of an employee would normally be expected to result in disaster to his employer's interest, as when the employee is manipulating certain apparatus or machinery, operating a locomotive engine in a densely populated area, or driving a motor vehicle upon a highway. And even in those cases while a failure to maintain constant vigilance would ordinarily constitute negligence on the part of the employee, it could hardly be held to be an abandonment of the work he was employed to perform.

The nature of the employment was not such that it would be reasonably anticipated that damage or destruction of the employer's property would result by reason of the property not being within the range of the deceased's vision for a short period of time.

But it is not ordinarily to be expected that the night watchman will not relax his vigilance to some extent while attending to calls of nature, pausing for refreshments, or resting for a reasonable time during the long vigil of the night.

We do not think that the deceased abandoned his employment by not keeping the premises of his employer within his vision for a few minutes.

The employer contends that while coffee was still in the cups of the deceased and his companion when they were slain, that they may have consumed a first cup of coffee and drunk additional cups of coffee while engaged in a conversation.

We have carefully reviewed the record and do not find proof from which it can be inferred that additional cups of coffee were poured and that the deceased's visit was prolonged while the coffee was drunk. The fact that the coffee was still in the cup is a circumstance from which it might be inferred that the deceased had tarried no longer at the drive-in than was necessary to consume the coffee.

We think the evidence authorizes the finding of the Board of Workmen's Compensation that the deceased's death was proximately caused by an accident arising out of and in the course of his employment.

We have carefully considered cases the factual pattern of which is found in instances when the employee was free to use his rest or lunch period as he liked. This is not a case where the employee's work hours were interspersed by rest periods, but the deceased was drinking his coffee while still actively engaged in the duties of his employment.

Nor does the case at bar belong in the category of those cases in which it is shown that the injury or death of the employee arose out of some personal difficulty or other matters disassociated with his work. One of the most common hazards of a night watchman's employment is that he be set upon by robbers or burglars.

*Judgment affirmed. Gardner, P. J., Townsend, Carlisle, Nichols, JJ., concur. Felton, C. J., dissents.*

FELTON, C. J., dissenting. I dissent from the judgment first because the facts show that the employee had absented himself from the premises of his employer and the duties of his employment to a degree that amounted to a temporary abandonment of

his employment. While he was only 25 feet from the premises of his employer he was about a hundred yards from the property he was employed to guard. Secondly, I dissent because the evidence demands the finding that the homicide of the employee was caused by the wilful act of a third person directed against the employee for reasons personal to such employee within the meaning of the law. Code § 114-102. There was no evidence which would authorize the finding that the fact that the employee was a nightwatchman caused or in any way contributed to his death. If there had been any such evidence, it would have brought the case within the exception to the rule stated in the above Code section. *Pinkerton National Detective Agency* v. *Walker*, 157 *Ga.* 548 (122 S. E. 202, 35 A. L. R. 557) ; *American Mutual Liability Ins. Co.* v. *Herring*, 43 *Ga. App.* 249 (158 S. E. 448). In the absence of such evidence, the rule stated in the Code section applies.