19237. LADSON MOTOR COMPANY *et al. v.* CROFT.

ARGUED FEBRUARY 13, 1956—DECIDED MARCH 12, 1956.

*Whelchel & Whelchel,* for plaintiff in error.
*Short & Slocumb, Robert H. Cranford,* contra.

ALMAND, Justice. Ida Mae Croft, widow of J. D. Croft, filed her claim with the State Board of Workmen's Compensation against Ladson Motor Company and its insurance carrier, to recover compensation on account of the death of her husband, an employee of the motor company. She was awarded compensation by the board. The appeal of the employer and insurance carrier was denied by the superior court, and the Court of Appeals affirmed this order. *United States Fidelity &c. Co.* v. *Croft,* 93 *Ga. App.* 114 (91 S. E. 2d 110). We granted the application of the employer and carrier for certiorari.

The sole question involved here is whether the undisputed evidence in the case authorized a finding that the death of the claimant's husband arose out of and in the course of his employment, and was not because of the illegal act of a third person directed against the employee for reasons personal to such employee.

The undisputed evidence in this case discloses: The claimant's husband was employed by the motor company as a night watchman, his duty being to patrol the premises of the employer and protect the building and automobiles stored adjacent thereto against fire and theft. His hours of employment were from 7 o'clock p. m. to 7 o'clock a. m. Two or three nights before he was killed, Croft asked permission of his employer to make coffee on the inside of the building, which permission was refused, though he was told he could make coffee just outside the building. Nothing was said about the employee going off the premises to get coffee, and no permission was given to him to go off the premises. A policeman testified that, at about 3:30 a. m. on May 14, 1954, he saw Croft sitting in a chair in a fruit stand operated by one Norman in a building 25 feet from the employer's building "and even a little further than that from the cars of the employer"; and that, by walking to the front of the building in which Croft was seen, one could have a full view of the employer's premises, or from the back door the building of the employer was visible except the far side where new cars were parked. The witness stated that Croft could see the premises if he were sitting in the back of the store. At the time the witness saw Croft, he was seated in a chair in the fruit stand, and 2 cups of coffee were on the table; that the witness returned to the fruit stand about 5 o'clock a. m., where he found Croft and Norman dead, and coffee was still in the cups. Croft's throat had been cut and his skull crushed and broken, and his body was in the chair in which he was sitting when last seen by the witness. Norman's throat was cut and a bullet wound was in his head, and the back door of the building was still closed. None of the property of the employer had been disturbed.

Though a presumption may arise that an employee's death arose out of and in the course of his employment where such employee dies on account of injuries received in a place where he

may reasonably be expected to be in the performance of his duties (*Standard Accident Ins. Co.* v. *Kiker*, 45 *Ga. App.* 706 (5), 165 S. E. 850), such presumption disappears upon the introduction of evidence to the contrary. *Travelers Ins. Co.* v. *Curry*, 76 *Ga. App.* 312 (45 S. E. 2d 453) ; *Aetna Casualty &c. Co.* v. *Fulmer*, 81 *Ga. App.* 97, 101 (57 S. E. 2d 865). No such presumption arises in this case, because the undisputed evidence shows that, at the time the employee met his death, he was not on the premises of his employer, nor in a place where he may reasonably have been expected to be in the performance of his duties. From the circumstantial evidence, the inference might reasonably be drawn that he was in the fruit stand solely for the purpose of drinking coffee. Nor are there any circumstances from which an inference might be drawn, either that he was performing any duty of a watchman on the premises of his employer, or that he was murdered because of anything that he was doing in behalf of his employer at the time. An inference can just as readily be drawn that he was murdered only for reasons personal to himself and to the assailant, as that he was murdered on account of his work as an employee. Facts which are consistent with either of two opposing theories prove nothing. So, where the evidence tends equally to sustain two inconsistent propositions, neither can be said to have been established by legitimate proof. *Federal Reserve Bank of Atlanta* v. *Haynie*, 46 *Ga. App.* 522 (1) (168 S. E. 112). Where a civil case rests on circumstantial evidence, the circumstances proved must tend in some proximate and reasonable degree to establish the conclusion claimed, and render less probable all inconsistent conclusions. So, where evidence is not more than a scintilla, if it is dependent entirely upon guess or speculation, it is insufficient to support a verdict. *Bentley* v. *Southern Ry. Co.*, 52 *Ga. App.* 188, 190 (2) (182 S. E. 815). In *Savannah River Lumber Co.* v. *Bush*, 37 *Ga. App.* 539 (140 S. E. 899), a workmen's compensation case, where the body of an employee was found dead off the premises of the employer, and there was no direct evidence as to the exact cause of his death, or what he was doing at the time thereof, it was held that there was not sufficient competent evidence to support an award of compensation. Judge Bell, speaking for the court, in words applicable here, said:

"Assuming that the decedent met his death by drowning, it is, under the evidence, the merest conjecture that he was thrown overboard by colliding with a tree, or that his death was in any way caused by his employment. For aught that appears, he may have been engaged in some temporary pursuit entirely disconnected with his employment, or his death may have been caused by some agency unrelated to his employment and not within the purview of the statute. The obligation of the employer under the workmen's compensation act is not that of an absolute insurer, and the burden is upon the claimant to prove a case to which the statute is applicable. Even though it may be true in this case that the decedent's death did in fact arise out of his employment, there is no evidence of the fact, and liability can not be imposed merely because the actual circumstances are incapable of proof. It is more consistent with legal justice that a given case should fail for want of evidence than that it should succeed merely because the truth can not be shown." Pp. 540, 541.

The burden was upon the claimant to show that the death of the deceased occurred at a place where he might reasonably have been in the performance of his duties, and while he was fulfilling his duties or was engaged in doing something incidental thereto, and that his employment was a contributing proximate cause. *Hughes* v. *Hartford Indemnity Co.*, 76 Ga. App. 785 (1) (47 S. E. 2d 143). Even if it should be assumed in this case that the deceased was at a place where he reasonably might have been in the performance of his duties, and while doing something incidental to such performance, there is no evidence that his employment was a contributing proximate cause of his death. Whether his death resulted from some matter incidental to his employment, or for reasons personal, or by reason of revenge, is wholly a matter of speculation and conjecture.

We are of the opinion that the evidence is wholly insufficient to show that the employee's death was by reason of an accident arising out of his employment. Accordingly, it was error for the Court of Appeals to sustain the judgment awarding compensation.

*Judgment reversed. All the Justices concur, except Head and Mobley, JJ., who dissent, and Wyatt, P. J., not participating.*

Mobley, Justice, dissenting. "The words 'in the course of the employment' relate to the time, place, and circumstances under

which the accident takes place, and an accident arises in the course of the employment when it occurs within the period of employment at a place where the employee may reasonably be in the performance of his duties and while he is fulfilling those duties or engaged in doing something incidental thereto." *New Amsterdam Casualty Co.* v. *Sumrell,* 30 *Ga. App.* 682, 688 (118 S. E. 786) ; *Thornton* v. *Hartford Accident &c. Co.,* 198 *Ga.* 786 (32 S. E. 2d 816).

Did the accident in this case arise in the course of the employment; in other words, first did it occur during the period of employment? That the accident did so occur is unquestioned. Next, did it occur at a place where the employee could reasonably have been expected to be in the performance of his duties? The facts here show that it did. As a night watchman his duties were to watch a building and an adjoining lot on which automobiles were parked, and to protect the premises and the cars from fire and burglars. He was not permitted to enter the building; he was an outside watchman. He could have performed his duties off the premises as well as on, and he was not restricted to the premises. He had long hours—from 7 p. m. to 7 a. m. The evidence of the employer demonstrates that, in the performance of his duties, a watchman might reasonably have been at the fruit stand in question, which was only 25 feet from the premises and from which he could perform his duties of guarding the property from fire and burglars.

Keeping awake is always a problem with a night watchman, especially with one such as we are here dealing with, who had nothing to do but watch his employer's property. This watchman had asked his employer for permission to make coffee in the building which he was to watch. The employer had refused to allow coffee to be made in the building, but at the same time had told the employee that he could make it outside the building; that he thought the employee should make coffee to help keep awake; that a plug or something would be fixed outside the building for the purpose. No plug had been fixed at the time the employee died. The employer was asked "Q. In other words, you had given him permission to make coffee *if he could find a place and have coffee?"*, and he replied: *"That is right.* I told him if he rigged up an apparatus down there on that end of the building it

was absolutely all right for him to make it, and he did not turn around and say 'Do you mind me going down there and making coffee with E. T.?' [The person found dead with the deceased employee.] If he had said that I would have said it was all right." Thus the employee had permission to make coffee if he could find a place to make it, and he did find such a place at the fruit stand.

This evidence shows that the employee could reasonably have been expected to be at this fruit stand in the performance of his duties, and, in fact, his employer would certainly have expected it.

Next, was the employee fulfilling his duties or engaged in doing something incidental thereto at the time the accident occurred? "Such acts as are reasonably necessary to the health and comfort of an employee while at work, such as the satisfaction of his thirst, hunger, or other physical demands, or protecting himself from excessive cold, although personal to himself and not strictly acts of service in his employment, are nevertheless incidental to the employment, and injuries sustained in the performance of such an act are generally held to be compensable as arising out of and in the course of the employment." 58 Am. Jur. 742, § 236; *Thornton* v. *Hartford Accident &c. Co.*, supra; *Employers Liability Assurance Corp.* v. *Pruitt*, 63 *Ga. App.* 149, 151 (10 S. E. 2d 275); 1 Honnold's Workmen's Compensation 379-384, § 111.

Thus the employee was doing something incidental to his employment, i.e., making coffee.

The next question is did the accident arise out of the employment? An accident " 'arises out of' the employment when there is apparent to the rational mind, upon consideration of all the circumstances a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work, and to have been contemplated by a reasonable person familiar with the whole situation as a result of the exposure occasioned by the nature of the employment, then it arises 'out of' the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and which comes from a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the

work, and not common to the neighborhood, . . . and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence." *New Amsterdam Casualty Co.* v. *Sumrell*, supra; *Fried* v. *United States Fidelity &c. Co.*, 192 *Ga.* 492, 495 (15 S. E. 2d 704).

Inasmuch as the employee in this case was found dead at a place where he might reasonably have been expected to be in the performance of his duties, a natural presumption arises that his death arose out of and in the course of his employment. _*Standard Accident Ins. Co.* v. *Kiker*, 45 *Ga. App.* 706 (5). In the report of the last-cited case, it appears that the deceased was a night watchman, who was found in the basement of his employer's premises, his body pierced by bullet wounds. There appears no evidence that the premises were molested in any way. The doors of the building wherein he was found were locked, one of these doors being of a type which latches upon being closed. It was said: "So where a night watchman is found dead in a place where he might reasonably be expected to be in the performance of his duties, the natural presumption arises that his death arose out of and in the course of his employment." In view of the presumption, there would be no further burden upon the claimant to establish that the accident arose out of the employment and in the course thereof. If the employer contends that this is not true, then the burden is placed upon him of offering evidence to rebut the presumption, and none was so offered in this case. If the employer contends that the employee was or might have been killed for reasons personal to the employee, or by reason of revenge—which, under Code § 114-102, would not be a compensable injury within the meaning of the Workmen's Compensation Act—the burden is upon him to introduce evidence in proof of that contention. "If the employer asserts or relies upon exceptions, it is his duty, and upon him rests the burden, of proving the facts upon which the exceptions depend." *Pinkerton National Detective Agency* v. *Walker*, 157 *Ga.* 548, 552 (122 S. E. 202).

Justice Head authorizes me to state that he concurs in this dissent.