### 41605.  JUGGILAL KAMLAPAT v. PURVIS-WADE CARPET MILLS.

ARGUED NOVEMBER 2, 1965—DECIDED NOVEMBER 19, 1965—
REHEARING DENIED NOVEMBER 30, 1965.

*Brannen, Clark & Hester, Perry Brannen, W. Ward Newton,* for appellant.

*Adams, Adams & Brennan, Edward T. Brennan,* for appellee.

EBERHARDT, Judge. Plaintiff in execution, Purvis-Wade Carpet Mills, urges that the verdict finding the property subject to the levy was proper because the sale of the jute was a transaction between two firms in which a partner in the purchasing firm was the father of the partners in the selling firm and that badges of fraud appear which authorized the jury to conclude that there had in fact been no sale, or, if so, the sale was made for the purpose of hindering, delaying and defrauding this creditor.

The evidence of the sale, both oral and documentary, is overwhelming. The one fact relied upon as an indication that there may not have been a sale and that the purchasing firm may have been acting merely as an agent for the seller to dispose of the jute, was the testimony of Mahabirprasad Saraf, a partner in the selling firm, that the purchase price had been paid but that he did not remember the mode of payment. It is insisted that since the amount was in excess of $100,000, if payment had been made he would have remembered the mode. But it was testified also that settlement must, under the foreign exchange regulations, be *handled through the banks.* Consequently, though the Bank of Baroda, Ltd. may have received and credited to the seller the purchase price as it was remitted, it would be most unusual if the seller should have any knowledge at all of the mode of settlement. Further, it appears that the buyer was bound, *in any event,* to pay the purchase price— no matter what happened to the jute. That testimony is entirely inconsequential. The mode of settlement was immaterial.

Relative to the other contention, that the sale was made to hinder, delay and defraud Purvis-Wade, we have only to refer to the contract between it and Sitaram dated October 10 in which it was recited that the agreement was arrived at "with a clear understanding that those three hundred ninety-two (392) rolls [of carpet backing in the warehouse of Savannah

Ports Authority] *will be disposed of by Sitaram Mahabirprasad in any way the latter may see fit* without any recourse on account of price difference or otherwise against Purvis-Wade Carpet Mills." (Emphasis supplied).

Thus, at a time when Purvis-Wade knew that it had a claim against Sitaram, it specifically agreed, in effect, that Sitaram might proceed to dispose of the jute in the warehouse at the Savannah docks for cash, on credit, or on any terms, and to anybody. Sitaram was given a completely free hand in disposing of the jute, and in return Sitaram relieved Purvis-Wade of any claim that might result on account of the difference in the price which might be obtained on sale of the jute and the price that Purvis-Wade had agreed to pay for it. This contract alone should be, and we think is, enough to dispose of the contention that the sale was made to hinder, delay or defraud Purvis-Wade.

But, pretermitting the contract, claimant was entiled to the verdict. There was no effort at any time to hide or remove the jute. It remained in the Savannah warehouse without let or hindrance more than four months after the sale until levied upon February 13, 1964. If there were a conspiracy between Sitaram and Juggilal to defraud Purvis-Wade by putting the jute beyond its reach, reason urges that this would have been accomplished by getting it out of the warehouse and out of Georgia long before the levy was made. There is a total absence of evidence that the sale adversely affected the financial ability of Sitaram to meet its obligations, including the claim of Purvis-Wade. The sale was not to a fly-by-night firm having no financial responsibility; it was to the third largest industrial firm in India, whose history extends back some 200 years. It was not made at a price below market or value, but at 78 cents, C&F, per yard, which amounted in some instances to $1.02 and others to $1.06 per yard, total. It is worthy of note that in the contract of October 10 Sitaram had agreed upon a price to Purvis-Wade of $1.00 per yard for future deliveries, with 90 days for payment. "As between the grantor and the grantee, in the absence of fraud, any sum paid or contracted to be paid is a sufficient consideration to make the

conveyance valid." *Martin v. White,* 115 Ga. 866, 868 (42 SE 279).

The contention that in testifying Mr. Argawala concealed that one of the partners in Juggilal, the purchasing firm of which he was manager of the export division, was the father of Sitaram Saraf and Mahabirprasad Saraf, partners in the selling firm, is without merit. As to this, the questions and answers were:

"Q. Is there any connection between Juggilal Kamlapat and Sitaram? A. No connection. Q. There is no identity of ownership? A. No connection whatever. You mean business connection? Q. Well, are the principals in either company, are they interlocking directorates or any such thing as that? A. No. Q. I mean, are any officers or stockholders in one officers and stockholders in the other? A. No."

Clearly, the witness was being interrogated solely as to any interlocking financial interests, and he was testifying as to that. Counsel explained the import of his questions after he was asked by the witness whether this was what he sought to know. If counsel had asked about family relationships, or had indicated that he sought that information by his questions when asked whether he meant business connections, there is no reason to suppose the witness would not have answered truthfully as to any information sought. He gave the information which he understood counsel to be seeking. "The law presumes that witnesses who testify are credible and worthy of belief, unless impeached or otherwise discredited." *Coates v. State,* 192 Ga. 130 (2) (15 SE2d 240). When the witness asked "You mean business connection?" the inquiry should have put counsel on notice that some other connection *might* exist, and if he wished information as to that he could and should have asked about it. But he did not. "Notice sufficient to excite attention and put a party on inquiry shall be notice of everything to which it is afterwards found such inquiry might have led. Ignorance of a fact, due to negligence, shall be equivalent to knowledge." *Code* § 37-116.

That there were only 256 rolls of the jute in the warehouse when the levy was made is not a badge of fraud. Again, under the contract of October 10, Sitaram had a free hand to dis-

pose of it in any manner, as one lot or in parcels. But the evidence discloses that the whole of the lot was sold to Juggilal. Most surely Juggilal had an equal right and free hand to dispose of it.

The contention of plaintiff in fi. fa. is grounded upon the law as found in *Code* § 28-201 (1): "Every assignment or transfer by a debtor, insolvent at the time, of real or personal property . . . either in trust or for the benefit of, or in behalf of creditors . . ." is void. There is a total absence of evidence that Sitaram was insolvent at the time, or that the transfer rendered them insolvent.

"Every conveyance of real or personal estate, by writing or otherwise, . . . had or made with intention to delay or defraud creditors, and such intention known to the party taking" is void. *Code* § 28-201 (2). See also *Code* § 96-204. Not only is there no evidence of any intent on the part of Sitaram to hinder or delay creditors, including Purvis-Wade, but there is also a total absence of any evidence showing or tending to show that the purchaser, Juggilal, had knowledge of such an intention. In *Baker v. Goddard,* 205 Ga. 477, 482 (53 SE2d 754), the court asserted: "When this Code section is applied to conveyances for a valuable consideration, it is necessary that the intention should have been known to the party taking, even though the transaction be between husband and wife." There was no evidence indicating that Juggilal knew of or had any information as to the existence of the claim of Purvis-Wade against Sitaram.

"Every voluntary deed or conveyance, not for a valuable consideration, made by a debtor insolvent at the time" is void. *Code* § 28-201 (3). Any contention that the transaction here was voluntary must fall in the light of the uncontradicted proof of the contract of sale by which the seller was obligated to pay the purchase price—in all events, and uncontradicted evidence that payment was accordingly made. And again, there was no evidence of insolvency on the part of the seller—either before, at the time of, after or as a result of the sale. The sale was not a "bulk sale" within the meaning of *Code* § 28-203, et seq. (now supplanted by *Ch.* 109A-6), and it raised no duty

on the purchaser to call on the seller for information as to his debts. *Long Cigar &c. Co. v. Harvey,* 33 Ga. App. 236 (1) (125 SE 870).

The sale was not negotiated by or through the father, but through the manager of the foreign exports division of Juggilal, who was accountable to all of the partners for his actions. The record is devoid of evidence showing that the father, or, for that matter, any of the partners in Juggilal ever had knowledge or information relative to the transaction until after this litigation developed, save that which may be imputed by law to partners concerning acts of their agents.

"Fraud cannot be presumed at law, but it may be proven, from circumstances." *Colquitt v. Thomas,* 8 Ga. 258 (3); *Code* § 37-706. Though a transaction between near relatives is to be scanned closely, yet some proof of its fraudulent nature must appear, and until that proof appears the rule has no application. *Hoard v. Maddox,* 202 Ga. 274 (1) (42 SE2d 744); *Hicks v. Sharp,* 89 Ga. 311 (3) (15 SE 314). "It is true, as declared in *Code* § 37-706, that 'slight circumstances may be sufficient' to show fraud; but it is also provided therein that 'fraud may not be presumed.' Circumstances creating a mere suspicion are not sufficient." *Watson v. Brown,* 186 Ga. 728, 731 (198 SE 732). Accord: *Boney v. Smallwood,* 202 Ga. 411, 416 (43 SE2d 271); *Dollar v. Johnston,* 87 Ga. App. 261, 270 (73 SE2d 336). Given the most favorable construction to plaintiff in fi. fa., the evidence shows no more than a mere *suspicion* that because a partner in the purchasing firm was father to the partners in the selling firm there *may* have been something wrong with the sale. "Finding of fact based on mere conjecture can not be upheld." *U. S. Fidelity &c. Co. v. Brown,* 68 Ga. App. 706 (3) (23 SE2d 443). "[M]ere conjecture does not constitute evidence upon which . . . findings may be based." *Globe Indem. Co. v. Brooks,* 84 Ga. App. 687, 688 (67 SE2d 176). "[W]here evidence is not more than a scintilla, if it is dependent entirely upon guess or speculation, it is insufficient to support a verdict." *Ladson Motor Co. v. Croft,* 212 Ga. 275, 277 (92 SE2d 103).

"A bona fide transaction on a valuable consideration, and

without notice or ground for reasonable suspicion, shall be valid." *Code* § 28-201 (2). Unquestionably there was a valuable consideration, and as we have noted, there is a total absence of evidence indicating that Juggilal had either notice or a reasonable ground for suspicion.

We conclude, as did the court in *Watson v. Brown*, 186 Ga. 728, 731, supra, that "the evidence in this case, construed most strongly against the claimant, does no more than create a suspicion as to the bona fides of the transaction here attacked as fraudulent. The evidence demanded a finding that the property was not subject to the levy. . ."

Moreover, under *Code Ann.* § 111-427 the goods being in the hands of a warehouseman who had issued a negotiable receipt therefor, which was outstanding at the time of levy, rendered the jute not subject to the levy and claimant was entitled to prevail.

The court erred in overruling claimant's motion for judgment notwithstanding the verdict. Other errors enumerated are not reached.

*Judgment reversed with direction that a judgment n.o.v. be entered in favor of the claimant. Nichols, P. J., and Pannell, J., concur.*

### On Motion for Rehearing.

The motion for rehearing cannot avail, for title to the jute passed upon the issuance to Juggilal of the warehouse receipts —whether any part of the purchase price was paid or not (*Code* §§ 111-418, 111-421, 111-427, 111-443, 111-444, now supplanted by *Ch.* 109A-7), and from that time the seller had an enforceable claim against the buyer for the purchase price. *Code* § 96-113 (now supplanted by § 109A-2—709) ; *Oklahoma Vinegar Co. v. Carter*, 116 Ga. 140 (42 SE 378, 59 LRA 122, 94 ASR 112).

Movant wholly ignores the effect of its contract of October 10, by which it agreed that Sitaram might dispose of the jute "in any way the latter may see fit." Application of the good faith test as against Sitaram could require no more than that in making the sale it obtained fair value for the goods, and the evidence meets that requirement, particularly in the light of

the Purvis-Wade claim that the jute was of inferior quality. But in this connection it must also be observed that Sitaram, the defendant in fi. fa., was not a party to the claim case. *Keith v. Hughey*, 138 Ga. 769 (3) (76 SE 91). The purchaser-claimant, Juggilal, owed no duty to Purvis-Wade, even in purchasing for less than value, unless it should appear that it *knowingly* purchased from one who, in making the sale, intended to defraud his creditor. *Baker v. Goddard*, 205 Ga. 477, 482, supra. Any rule of further requirement would paralyze commerce. In attacking the sale as fraudulent the burden was upon the plaintiff in fi. fa. to show both the fraud and scienter. This it utterly failed to do.

*Motion for rehearing denied.*