## 48628. CONTINENTAL CASUALTY COMPANY v. ADAMS.

ARGUED OCTOBER 1, 1973 — DECIDED OCTOBER 18, 1973 — REHEARING DENIED NOVEMBER 2, 1973 —

*Gambrell, Russell, Killorin, Wade & Forbes, Edward W. Killorin, Richard L. Stumm,* for appellants.

*Burdine & Freeman, Essley B. Burdine,* for appellee.

DEEN, Judge. ■ While we recognize an error in the statement of facts (a statement indicating Adams had taken a bag of money with him) this does not enter into the result of the case. The sentence first occurs in the statement of facts of the single director, which was duplicated in that of the full board. Obviously, since the first award denied and the second granted compensation, the decisions did not hinge on the existence or nonexistence of this fact. Further, the Chairman of the Board of Workmen's Compensation, over whose signature the award was written, did not include the words "arose out of and in the course of the employment" but instead the words "Adams was within the scope of his employment." We agree with distinguished counsel for the appellant that this amounts to borrowing words from tort law, but feel he will agree with us that the chairman of the compensation board is aware that to enter an award in favor of the claimant there must be a finding that the accident arose out of and in the course of the employment, so that we may understand the words used as having been intended in this sense.

■ The appellant in this case relies primarily on *Savannah River Lumber Co. v. Bush,* 37 Ga. App. 539 (140 SE 899); *Georgia Casualty &c. Co. v. Conner,* 117 Ga. App. 233 (160 SE2d 436) and *Ladson Motor Co. v. Croft,* 212 Ga. 275 (92 SE2d 103) to take this case out of the protection of the presumption stated in the first headnote in *Conner* as follows: "Where an employee is found dead in a place where he might reasonably be expected to be in the performance

of his duties, the natural presumption arises that his death arose out of and in the course of his employment." The presumption did not apply in *Bush* because (1) the board found against it; (2) Bush was not admittedly in the course of employment while going to or from his place of work, and (3) he was found drowned beside his boat in an area which was not between his home and his work. Consequently the *Bush* case, although cited and heavily leaned upon in the *Conner* and *Croft* cases, really has little to do with the situation here. The *Conner* case, where the board granted an award which was affirmed by this court but reversed by the Supreme Court, is based on its particular facts — that is, the presumption of employment as a causative factor vanished when the employee, a night watchman employed on certain premises, left those premises and went over to another location where it was possible for him to get food and coffee, the clear inference from this evidence being that the attack upon him by the unknown assailant was not connected with his job of guarding the premises.

This leaves the *Conner* case from which we have already quoted. There the court held that, although the employee had been sent to another county to collect money from delinquent debtors, the evidence failed to show that the woods where his body was subsequently found bore any relationship to the direction in which he would have gone on that particular assignment, and that the claimant had therefore failed to carry the burden of providing facts from which the presumption of scope of employment would arise. It is strongly urged that the same defect meets us here, even granting the rationale of the full board award that Adams was acting in the course of his employment in driving between the place where he let out the employee and his own home where yet another duty — preparing the uniforms for the next day's work — awaited him. This is because an explanation of what occurred between the time he left and the time his body was found can appear only as an inference arising from the circumstances of the case. If the inference that he was on some errand of his own when he was accosted is equally as likely as the one that he was on his way back home, then the widow claimant has not carried her burden. "When the party upon whom the burden of an issue rests seeks to carry it, not by direct proof, but by inferences, he has not, in this reasonable sense, submitted any evidence for a jury's decision, until the circumstances he places in proof tend in some proximate degree to establish the conclusion he claims; and for this, the facts shown must not only reasonably support that conclusion, but also

render less probable all inconsistent conclusions." *Ga. R. & Elec. Co. v. Harris,* 1 Ga. App. 714, 717 (57 SE 1076). In civil cases the test at the trial level is whether, by a preponderance of evidence, the circumstances render less likely any inconsistent hypothesis, while at the appellate level the test is whether there is some evidence under which the trior of facts could arrive at this conclusion.

On the appellant's side of the picture is the fact that the body was found in a location several miles away and in an opposite direction from his home, authorizing an inference that he deviated from his homeward route for reasons of his own, and that he therefore was not in the course of his employment when he met his death.

On the appellee's side are the facts (a) that he started off in the opposite direction from where his body was found, which direction if pursued would be his direct route home; (2) it was almost 1:00 in the morning, the deceased still had work to do, and his job to attend to the next day, and nothing whatever suggests that after leaving in the direction of home he voluntarily changed his course; (3) there was evidence that the deceased was killed at the place his body was found, but his automobile was abandoned at another location, indicating that he had already met with foul play before he was carried to the place where he was killed. We cannot say as a matter of law that the trior of facts is not justified in determining that the evidence preponderates more toward the second set of inferences than toward the first. This being so, the full board would be justified in finding that the death did in fact arise out of Adams' duties in traversing this area in the early morning hours, and thus arose out of and in the course of his employment, rather than resulting from some personal mission of his own commenced *after* the employees were returned home, and as to which there is not one smallest shred of evidence.

The trial court did not err in affirming the award of the full board.

*Judgment affirmed. Quillian, J., concurs. Bell, C. J., concurs in the judgment only.*