Hillsborough, } No. 3185.
Dec. 3, 1940. }

ROSALIE PERKINS *v.* NASHUA MANUFACTURING CO.

*Robert E. Earley* and *Robert J. Doyle* (*Mr. Doyle* orally), for the plaintiff.

*Alvin A. Lucier*, for the defendant.

ALLEN, C. J. As understood, defendant's counsel in oral argument abandoned its contention that the plaintiff was not acting in the scope of her employment when she was injured and relies on its claim that she did not offer sufficient evidence of her non-assumption of the danger she encountered. This position carries with it a waiver of the exception to the court's failure to instruct as requested.

But if the position that the injury was incurred outside the service has not been yielded, the plaintiff's errand was so incidental to her work that it did not amount to an interruption of it or departure from it. It was permitted by her "third-hand," understood to be a foreman in authority over her and her work. It did not take her away from the mill premises and only a few minutes of time were required for its performance. While the errand, to pay a personal debt to the mill nurse, was not a preparatory or final incident in connection with her work (*Gallienne* v. *Company*, 88 N. H. 375; *Snook* v. *Company*, 90 N. H. 441), it was so slight and negligible a deviation from her service as reasonably not to be a departure and absence from her employment. The brief and permitted interruption of her routine work did not suspend her status as an employee.

"But the law aims to be reasonable. It recognizes that it has to deal with imperfect human beings, and not with faultless and unerring automatons, and that its rules should be shaped accordingly. It must recognize the fact that men employed in hard physical labor require and habitually take some brief respite at times during the work as opportunity offers; and it must also recognize the fact that such a respite, if only of the ordinary and usual nature, cannot rightly be called a leaving of the employment." *Charron* v. *Company*, 149 Wis. 240 (49 L. R. A. (N. S.) 162, 165).

The line between conduct not a part of the work but which is reasonably incidental to the employment and conduct which is not thus incidental may be difficult to draw in given circumstances. But the difficulty is the frequent one met in applying rules to facts when slight differences of fact produce differences in liability although there is consistent adherence to principle.

The rule does not contravene cases in which the employee's conduct could not be regarded as reasonably incidental to his work (*Manning* v. *Railway*, 80 N. H. 404), or in which "he was in a place where he had no business to be" (*Straw* v. *Company*, 76 N. H. 35), or in which he was doing work not within his engagement (*McGill* v. *Company* 70 N. H. 125; *Morrison* v. *Company*, 70 N. H. 406).

While the plaintiff was familiar with the passageway and knew

that the boxes were attached to the wall, there was evidence that she neither knew nor had occasion to know that the doors of the boxes might be left open. She was ignorant of the danger arising from the fastening of the door, the lock of which was broken. She had seen the stick in the door before the accident, but she was not chargeable as matter of law with notice of its inadequacy to keep the door closed. She was not required to understand that it was not an effective substitute for a key. And having the right to assume that the passageway was safe for use, she was not required to be on the watch for obstructions which made it unsafe and of which she had no notice.

The employer, having the duty to maintain the passageway in reasonably safe condition, was findably at fault for not appreciating the danger of an open door to an employe not warned of it, and for not appreciating the use of the stick as an ineffective appliance to keep the door from opening. The lock had been broken for at least two days before the accident, it was an issue of fact whether reasonable inspection either did or would have disclosed the break, and it was also for the jury to say whether reasonable foresight would have led to effective measures to keep the door closed, and seasonably before the plaintiff was hurt.

In summary, the evidence warranted a finding that the defendant was at fault for maintaining a dangerous situation, while the plaintiff, not duly warned or aware of the danger, did not assume it. And having no notice of it or occasion to learn about it, a finding of her fault for being inattentive to it was not required. Thus there was evidence of all the elements of liability. *Hill* v. *Company*, 81 N. H. 190; *Owen* v. *Hospital*, 82 N. H. 497; *Maltais* v. *Concord*, 86 N. H. 211. The motions for a nonsuit and for a directed verdict were rightly denied.

A medical expert's testimony related to the issue whether the accident caused the plaintiff's deafness. He expressed the opinion that the deafness was thus caused, basing his opinion in part upon the assumption that she had no deafness before the accident and in part upon the plaintiff's story to him that she struck so hard against the door as to be thrown to the floor, and was "very dizzy and couldn't get up for awhile." This story was an exaggerated account of the severity of her impact against the door, since she testified that she did not fall, but leaned against a frame, after which "she took her time and got her breath," then picked up from the floor the stick used to keep the door fastened, closed the door with it, and proceeded to complete her errand. In response to a question asked by plaintiff's counsel whether the deafness was "probably a result of the

blow," the expert answered: "I hate to sit on the fence, but I can't make a definite statement. . . . It is a probability, and it is a possibility." The court undertook to explain to him the difference between probabilities and possibilities, and later asked him whether the deafness was probably the result of the injury, or merely a possible result of it. He replied that he would go no farther than to say it was possible. In concluding his testimony he stated that if the plaintiff's story to him was not accurate, his opinion was conjecture.

At the close of the evidence for the plaintiff a motion to strike out the testimony of the witness because it showed no connection between the deafness and the accident, was denied, the court remarking: "That is for the jury to say. His testimony is kind of confusing." The motion, not being denied in discretion if it might have been on the ground that it was dilatory (*Wik* v. *Company*, *ante* 170), presented the question whether the testimony could be of aid in assisting the jury. The jury may weigh and determine the probative value of a witness' testimony, but whether it can have any value is matter of law.

With special account taken of the foregoing recitals from the expert's testimony, a reading of the testimony in its entirety makes it plain that the jury could have derived no benefit from it, but could only have been confused or misled in respect to its force and effect. Informed that the blow, as its circumstances were related to them by the plaintiff, was only a possible cause of the deafness, they might not therefrom find that the blow was causal in fact. But the submission of the testimony to them authorized such a finding. It could not be regarded as harmless and immaterial merely because it had no probative quality. Jurors are not precisians. "It is for ordinary minds, and not for psychoanalysts, that our rules of evidence are framed. They have their source very often in considerations of administrative convenience, of practical expediency, and not in rules of logic. When the risk of confusion is so great as to upset the balance of advantage, the evidence goes out." *Shepard* v. *United States*, 290 U. S. 96, 104.

As has been said, the effect of the allowance of the testimony to stand was to permit a finding from it of causal connection. The testimony bore materially on the issue of damages, and the verdict is not to be upheld, since it could not be found that the jury disregarded the testimony in making their award. *Bruton* v. *Corporation*, 87 N. H. 304, 305.

*New trial.*

All concurred.