No. 44,055

Lucille L. Tompkins, Widow of Raymond Evans Tompkins, Sr., Deceased, *Appellee*, v. George Rinner Construction Company, Inc., and Western Casualty and Surety Company, *Appellants*.

(398 P. 2d 578)

Opinion filed January 23, 1965.

*Herbert A. Marshall*, of Topeka, argued the cause, and *Doral H. Hawks*, *E. Gene McKinney*, and *Wayne E. Hundley*, also of Topeka, were with him on the brief for the appellants.

*J. H. Eschmann*, of Topeka, argued the cause, and *L. M. Ascough*, and *John A. Bausch*, also of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

Price, J.: This is a workman's compensation case. The workman died as a result of his accidental injuries. The district court entered an award to his widow for the death benefit, together with a funeral allowance. The employer and its insurance carrier have appealed.

It was stipulated that the only question presented is whether the fatal accidental injury arose out of and in the course of the employment.

The workman being deceased, his widow is of course the one making claim. For convenience, however, we will refer to him as claimant.

Oddly enough, this entire case swings around and hinges upon the circumstances surrounding the purchase by claimant of a jar of "instant coffee" for use in the office of defendant construction company.

Highly summarized, the background of the matter is substantially as follows:

Dean and Bill Rinner were the owners of defendant company. Claimant had worked for them since 1950 in the capacity of office manager. Apparently, he was more or less his "own boss"—so to speak. The employment relationship was on a quite informal basis. If there were special or urgent things to do, claimant came to work early in the morning, and, when occasion required, he was there "after hours" in the evening. He did not "punch a clock" and received no pay for "overtime." He frequently ran errands for the company and generally drove his own car, for which he was not reimbursed.

For several years it appears that around the office coffee had been available to the employees, customers, or any one else who happened to drop in. "Instant coffee" was used. Claimant had not been delegated or directed by the Rinners or by any one else in authority, to purchase the coffee used at the office, but it appears that for sometime he had taken it upon himself to do so, and frequently had bought a jar of instant coffee for office use while grocery-shopping with his wife. On these occasions he would pay for the coffee and then reimburse himself from the petty cash drawer at the office. The Rinners were not aware of such practice, but had they been, it would have met with their approval.

Claimant customarily took an hour off for lunch. His time was his own, and he could and did eat lunch where and when he cared to. During his lunch hour period he frequently ran errands—both personal and company, and most of the time used his own car— for which he was not reimbursed.

On the morning of March 6, 1963, claimant went to work as usual. His wife called him by telephone and told him that she had invited some friends in for dinner the following evening. She gave him a list of groceries to purchase. He suggested that they get them that evening when they went to the store. Apparently such arrangement was satisfactory to her. That noon, claimant and Bill Rinner left the office together to go to lunch at a restaurant in North Topeka which they frequently patronized. Claimant suggested that he drive his own car, giving as his reason that he wanted to pick up some groceries for his wife. Nothing was said about getting any coffee. The understanding was that he would meet Rinner at the restaurant on his return from the grocery store. While returning from the store on a direct route to the restaurant,

claimant's car was involved in a collision. He died as a result of his injuries. In his car were found the items of groceries which his wife had mentioned to him over the telephone that morning. Also found in his car, in a separate sack, was a ten-ounce jar of instant coffee. Coffee was not included in the list of groceries he was to purchase for his wife. They used "percolator" type coffee at home.

His wife had known that in the past he now and then bought instant coffee for use at the office. Such purchases had been made by him when grocery-shopping with her in the evening, or else while running around during the noon hour. It was her opinion that he would not have made a special trip during office hours to purchase such coffee. There was evidence to the effect that on the day in question the office was "out of coffee."

In rendering judgment for the widow the court stated that it had—

". . . reached the conclusion that the evidence is barely sufficient to show that the deceased employee, Raymond Tompkins, was on a mission partially for the benefit of his employer at the time of the fatal accident."

The court further commented that since its decision in *Taylor v. Centex Construction Co.,* 191 Kan. 130, 379 P. 2d 217, had been reversed—it was "gun shy"—and that this (case) was a better case for claimant than was that case.

In contending there is no substantial evidence that claimant's death arose "out of" and "in the course of" his employment, defendant employer and its insurance carrier contend that the evidence shows conclusively that claimant was on a personal errand to purchase groceries for his wife during his noon lunch hour when the fatal accident occurred, and that if the coffee found in his car was for use at the office the purchase of it was only incidental to the trip to purchase groceries for his wife and at most it was therefore a "dual purpose" trip. It further is contended the evidence shows that no special trip would have been made by claimant or any other person to purchase coffee for the office and, therefore, under the "dual purpose" rule the accident is not compensable because the evidence shows that no special trip would have been made to purchase the coffee.

Appellee widow, on the other hand, contends that from the evidence the inference is clear that the office was out of coffee; that claimant probably would have gone after it any way even though he would not have bought groceries for her, and that even under

the "dual purpose" rule the purchase of the coffee was at the very least a concurrent mission and was so tied in with claimant's general duties around the office as to constitute a causal relationship between the injury and his employment.

The workmen's compensation act (G. S. 1949, 44-501) provides that in order to be compensable an accidental injury must arise "out of" and "in the course of" the employment. The terms "out of" and "in the course of" are used in the conjunctive, and both conditions must exist.

Generally speaking, the term "in the course of" the employment relates to the time, place and circumstances under which the accident occurred, and means the injury happened while the workman was at work in his employer's service. (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 301, Syl. 3, 303 P. 2d 197.)

The question whether an accidental injury can be said to have arisen "out of" the employment has been before this court many times and the term has a well settled meaning. In *Repstine v. Hudson Oil Co.,* 155 Kan. 486, 126 P. 2d 225, the workman was manager of a gasoline service station owned by respondent employer. As manager he was responsible for the money taken in at the station. It was customary for him to take the money home with him and bring it back when he came to work the next day. On the morning in question he was driving from his home to the station by the most direct route and was taking back to the station the previous day's receipts which he had taken home the night before. On his way to the station he was involved in an automobile collision and died from injuries received. There was no safe provided by the company at the station for the safe-keeping of the proceeds of the business, and there were no other means provided for him to take care of the money other than by taking it home and keeping it with him. It was his duty to protect the money at all times. The basis of his widow's claim for compensation was that since the company provided no other means whereby the money might be safely kept at the station or any other place, and since it was the duty of her husband to keep it safely in his custody and had custody of it at the time of his fatal injury—he was working at his employment at the time his death occurred. The district court upheld an award to her, and the employer and its insurance carrier appealed. In reversing the judgment it was said:

"This court has held that in order for the claimant to be entitled to compensation the accident must have arisen 'out of' the employment and happened

'in the course of' the employment. It arises 'out of' the employment when it is clear upon consideration of all the circumstances that there was a causal connection between the conditions under which work was required to be performed and the resulting injury. An injury which does not appear to have its origin in a risk connected with the employment, and cannot be shown to have flowed from the source as a natural consequence, does not arise 'out of' the employment. (Citing.)

"The fact that the employee happened to be doing something incidental to or in connection with his work does not mean that the accident which happened to him arose 'out of' his employment." (pp. 488, 489.)

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"When we review the above rules in the light of the circumstances of the case we are considering we are impelled to the conclusion that there was no causative connection between the fact that the deceased in this case had the money of his employer on his person when he was killed and his injury or accident would have occurred just the same had the money not been in his possession. The accident cannot be held to have arisen 'out of' the employment." (p. 490.)

In *Covert v. John Morrell & Co.*, 138 Kan. 592, 27 P. 2d 553, cited with approval in the foregoing case it was said:

" 'Arising out of' means that the accident came out of the employment and makes it a condition precedent to the right to recover compensation that the occurrence shall have resulted from the risk reasonably incident to the employment and that there be a causal connection. While not ordinarily essential that it be peculiar to the particular employment in which the workman was engaged at the time of the injury, it must arise out of a risk in some way peculiar to that in which he was engaged and not out of a hazard to which he would be equally exposed outside of the business." (p. 593.)

In *Rush v. Empire Oil & Refining Co.*, 140 Kan. 198, 34 P. 2d 542, also cited with approval in the Repstine case it was said:

"It never was the purpose of the compensation act that the employer should in all respects be an insurer of the employee, but he is such insurer only for those accidental injuries caused or produced in some way by the employment. The statute uses a rather broad term in the expression 'out of' the employment, thereby indicating that the statute should have a liberal interpretation to accomplish its purpose (Citing), but this does not mean that the act should be construed to include injuries which clearly did not arise out of the employment." (pp. 200, 201.)

The meaning of the term "out of" the employment also is discussed in *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 302, 303 P. 2d 197, in which it was held:

"The term 'arising out of' employment as used in G. S. 1949, 44-501 points to the cause or origin of the accident and requires some causal connection between the injury and the employment. An injury arises out of employment if it arises out of the nature, conditions, obligations or incidents of employment." (Syl. 4.)

In *Rorabaugh v. General Mills*, 187 Kan. 363, 356 P. 2d 796, it was held:

"Under the workmen's compensation act injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury." (Syl. 3.)

It is elementary that the workmen's compensation act is to be construed liberally in favor of the injured workman and his dependents; that the evidence is to be construed in the light most favorable to the party prevailing in the district court, and that this court's function is limited to questions of law, which, with respect to the evidence—means that this court examines it to determine if there is any substantial evidence to support the findings made below.

In the *Repstine* case, above, it was said:

"Where all of the facts are admitted the question of whether admitted facts justify the conclusion that the injury arose 'out of' and occurred 'in the course of' employment is a question of law." (Citing.) (p. 488.)

The "dual purpose trips" rule mentioned in the briefs of the parties is discussed in Vol. 1, Larson, Workmen's Compensation Law, § 18.00, *et seq.*, and we quote:

"§ 18.00  Injury during a trip which serves both a business and a personal purpose is within the course of employment if the trip involves the performance of a service for the employer which would have caused the trip to be taken by someone even if it had not coincided with the personal journey.  . . ."

The author states that the many widely-assorted problems can be solved by the application of a lucid formula stated by Judge Cardozo in *Matter of Marks v. Gray*, 251 N. Y. 90, 167 N. E. 181, (1929)—a formula which, according to the author, when rightly understood and applied, has never yet been improved upon.  Then follows this quotation from the *Marks* case:

"We do not say that service to the employer must be the sole cause of the journey, but at least it must be a concurrent cause.  To establish liability, the inference must be permissible that the trip would have been made though the private errand had been canceled.  . . .  The test in brief is this: If the work of the employee creates a necessity for travel, he is in the course of his employment, though he is serving at the same time some purpose of his own. . . .  If, however, the work has had no part in creating the necessity for travel, if the journey would have gone forward though the business errand had been dropped, and would have been canceled upon failure of the private purpose, though the business errand was undone, the travel is then personal, and personal the risk." (§ 18.12.)

The text also cites *Barragar v. Industrial Comm.*, 205 Wis. 550, 238 N. W. 368, also reported at 78 A. L. R. 679, followed by an annotation beginning at page 684. The Barragar case adopts the test laid down in the Marks case, and paragraph No. 3 of the syllabus reads:

"If the employee's work creates a necessity for travel, the trip at the outset is the employer's; if the journey would have proceeded although the business was dropped, it is the employee's trip."

The facts in the case before us are not in dispute, and so the question whether those facts justify the conclusion that the fatal accidental injury arose "out of" the employment—is a question of law (*Repstine* case, above, p. 488).

We believe the fair and reasonable inference to be drawn from the evidence is that the jar of coffee found in claimant's car immediately after the collision was for use at the office. But, measured by the yard-stick of the rules heretofore set out, may it be said the purchase of it—while claimant was buying groceries for his wife— transformed the admitted personal errand into a "business mission" with the result that the collision and fatal injury arose "out of" his employment?

We think not.

Buying coffee for the office was not one of the duties or obligations of claimant's employment. No one had ever directed or even authorized him to do so. It was purely an informal gratuitous gesture, habit or custom on his part, in no way connected with the business—as such. There was no causal connection between the conditions under which his work was required to be performed and the resulting injury. It cannot be said the injury had its origin in a risk connected with the employment, or that it flowed from the source as a natural consequence (*Repstine* case, above). The occurrence did not result from a risk reasonably incident to the employment, and there was no causal connection (*Covert* case, above). The injuries were not caused or produced in some way by the employment (*Rush* case, above).

We disagree with the trial court's conclusion that this case is a "better case for claimant" than the *Taylor* case, above. There the employee had sustained an "on the job" injury to his eye and had been directed by his employer to go to the company doctor. In returning to his job he was injured in an automobile accident. One of the principal questions in the case concerned deviation in the route taken, but it was held that eating his lunch enroute was merely

an incident which did not deviate from his employer's special purpose—that of obtaining medical attention for his eye which had been injured on the job.

Furthermore, and with respect to the "dual purpose" rule heretofore discussed, there is nothing in the evidence to indicate that a trip to the store to buy coffee would have been made even though the personal errand to buy groceries for claimant's wife had been abandoned or postponed.

We hold, therefore, that within the rules heretofore mentioned there is no evidence in this case to support the conclusion that claimant's injury arose "out of" his employment.

The judgment is reversed.

PARKER, C. J., and ROBB, J., dissent.

WERTZ, J. (dissenting): Under the provisions of G. S. 1961 Supp., 44-556, the appellate jurisdiction of this court in compensation cases is confined to reviewing questions of law only. The question of whether the disability of a workman is due to an accident arising out of and in the course of his employment is a question of fact (*Kafka v. Edwards*, 182 Kan. 568, 569, 322 P. 2d 785; *Allen v. Goodyear Tire & Rubber Co.*, 184 Kan. 184, 185, 334 P. 2d 370), and when determined by the trial court, will not be disturbed by this court where there is substantial evidence to sustain it. This court is required to view all the testimony in the light most favorable to the prevailing party below. If, when so considered, the record contains any evidence which supports the trial court's judgment, that judgment must be affirmed, being conscious at all times of the fact that this court has little concern with disputed questions of fact in ordinary lawsuits and none whatever in workmen's compensation cases, except to ascertain whether the record contains any evidence which on any theory of credence would justify the trial court's findings or conclusions of fact. (*Silvers v. Wakefield*, 176 Kan. 259, 270 P. 2d 259; *Pence v Centex Construction Co.*, 189 Kan. 718, 722, 371 P. 2d 100.)

No useful purpose would be gained by narrating the evidence. Suffice it to say, in my opinion both the direct and circumstantial evidence were sufficient to sustain the trial court's findings.

In a long line of decisions we have held that in a compensation case it is not required that the claimant shall establish his right to

an award by direct evidence alone or that he produce an eyewitness to the accident. Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence should rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court. (*Silvers v. Wakefield,* supra.)

I would affirm the judgment of the trial court.