197 So.2d 276

**The GLENS FALLS INSURANCE COMPANY OF GLENS FALLS, NEW YORK**

**v.**

**Louise S. ANDERSON.**

**3 Div. 243.**

Supreme Court of Alabama.

March 9, 1967.

Rehearing Denied April 13, 1967.

Ball & Ball, Montgomery, for appellant.

Capell, Howard, Knabe & Cobbs, Montgomery, for appellee.

MERRILL, Justice.

Louise S. Anderson sued The Glens Falls Insurance Company of Glens Falls, New York, under a group insurance policy, for damages due to injuries sustained by her in a fall. The cause was tried before the court without a jury and resulted in a judgment of $7,784.55 for the plaintiff. From that judgment, the defendant-insurer has appealed.

There is no dispute as to the essential facts. The plaintiff's claim arises as a third party beneficiary under a contract of insurance purchased by the State Highway Department pursuant to Tit. 23, § 3, Code 1940, which provides the equivalent of workmen's compensation benefits for Highway Department employees "who may be killed or injured in the line and scope of their employment."

The plaintiff was employed by the State of Alabama Highway Department, in a clerical capacity, and worked in the main Highway Department office building at Adams Avenue and Union Street in Montgomery. On the afternoon of July 22, 1964, during a coffee break, and to attend to business purely personal to her, she walked over to the Industrial Relations Building, a structure within the complex of State office buildings surrounding the Capitol, to pick up a check. It was her intention to go to the Capitol and cash the check at the office of the State Treasurer. The check was the proceeds of a loan made

by the Industrial Relations Credit Union to Mrs. Kate Stansell, the plaintiff's mother, who had endorsed it over to the plaintiff. As Mrs. Anderson walked into the Industrial Relations Building, she fell in the foyer which had become slippery due to standing rainwater. The parties stipulated that Mrs. Anderson was disabled for 83 weeks as a result of injuries suffered from the fall.

The plaintiff's working hours were from 8:00 A.M. to 5:00 P.M., with an hour off for lunch and two fifteen minute rest periods (referred to as coffee breaks), one in the morning and one in the afternoon. The accident causing Mrs. Anderson's injury occurred during the time she normally took a coffee break.

Mrs. Maxine Rowe, the plaintiff's supervisor on the job, testified that the afternoon coffee break is generally limited to fifteen minutes and the employee can use it any way he wants to; that on the occasion in question it was not necessary for Mrs. Anderson to get Mrs. Rowe's permission to go anywhere; that she could have gone downtown or anywhere else. It was Mrs. Rowe's understanding, however, that she was going over to the Capitol.

Colonel V. E. Richie, the personnel and training officer for the Highway Department, testified that it is not a violation of personnel rules for employees to visit in another building during an authorized rest period; that employees generally can use the fifteen minute break or rest period for any purpose they desire; that they could go to downtown Montgomery and do whatever they wanted. He stated further that the purpose of the daily breaks is to allow employees to relax and refresh themselves and get something to drink; that the employees have the same privileges during the coffee break as they do during the lunch hour except for the length of time.

The plaintiff testified that she was permitted to leave the Highway Department Building during these coffee breaks, and that it was fairly customary for employees to go out, walk around, drink coffee in different buildings, and tend to other matters.

The question for our decision is whether the plaintiff was injured "in the line and scope of [her] employment."

Counsel for opposing sides cite us to no factual situation in this State comparable to the one at bar. Our attention is called to many master and servant cases dealing with line and scope of employment and also workmen's compensation cases, based on accidents arising out of and in the course of employment, but none of those decisions provide us with a rule which exactly fits the circumstances of the instant appeal.

The coffee break has become somewhat of a fixture in the business and industrial life of our country. Its benefits are well known to both employee and employer. The former is allowed to relax and refresh himself—the latter obtains increased efficiency by permitting his workman a respite from the daily labors.

We have studied the decisions of other jurisdictions and textwriters for a workable rule to aid in solving cases of this nature and are persuaded that the test to be applied should be whether the employer retains control over the employée during the coffee break period. The subject is treated in Larson's Workmen's Compensation Law, Vol. I, § 15.54, where, beginning on page 246, the writer states:

"The operative principle which should be used to draw the line here is this: If the employer, in all the circumstances, including duration, shortness of the off-premises distance, and limitations on off-premises activity during the interval, can be deemed to have retained authority over the employee, the off-premises injury may be found to be within the course of employment."

And commencing on page 248 of the same work we find:

"If the employees during the coffee break are expected to go to a particular off-premises place, the element of continued control is adequately supplied. In Sweet v. Kolosky, [259 Minn. 253, 106 N.W.2d 908], the claimant fell on a public sidewalk between the place of employment and the drugstore where all employees were permitted, by their employment agreement, to go for a coffee break because of lack of facilities on the premises. Compensation was awarded."

This brings up the question of what is meant by "premises" of the employer. In Allen v. Genry, 39 Ala.App. 281, 97 So.2d 828, Judge Harwood wrote:

"The word 'premises' is an elastic and inclusive term. Leroy Franz, Inc., v. City of New Rochelle, Sup., 124 N.Y.S.2d 525; and it does not have one definite and fixed meaning, but its meaning is to be determined by its context and is dependent on circumstances in which used, Gibbons v. Brandt, 7 Cir., 170 F.2d 385; the term may mean a room, shop, building, or any definite area. State v. Goodchild, 151 Me. 48, 115 A.2d 725."

We have construed "premises" of the employer as used in our Workmen's Compensation Laws, Tit. 26, § 262(j), Code 1940, as the premises at or near which the service of the employee is to be rendered. Hayes v. Alabama By-Products Corp., 242 Ala. 148, 5 So.2d 624; Sloss-Sheffield Steel & Iron Co. v. Thomas, 220 Ala. 686, 127 So. 165. We think this construction should be applied here.

Even though plaintiff was an employee of the State of Alabama, the group insurance here involved covered employees of the State Highway Department only. Plaintiff's service was to be rendered at or near the State Highway Building. As long as she was lawfully in or near that building, even during a coffee break, she was under the constructive control of her employer. But when she left the premises of the State Highway Building, on a purely personal mission to another State building, unconnected with her employment, she was off-premises. The mere fact that the other building was also a State building and part of the Capitol Complex does not make it the premises where she worked as contended by appellee in brief.

An exponent of the "control by employer rule" is New York. We quote the full opinion of the Supreme Court of that State in Balsam v. New York State Division of Employment, 24 A.D.2d 802, 263 N.Y.S.2d 849:

"An employer and its carrier appeal from a decision of the Workmen's Compensation Board finding that the accident which befell claimant on December 11, 1963 arose out of and in the course of her employment.

"The facts are undisputed. The employer had authorized a 15-minute mid-morning rest period during which employees were permitted to leave its premises for the purpose of going to a neighborhood shop for coffee. On the day of injury claimant, a stenographer, departed from the premises during the coffee break but went directly to a nearby bank for the purpose of cashing a personal check. A fall on its highly polished floor resulted in an injury found to be compensable. Claimant testified to an intention of getting coffee upon the completion of the banking errand.

"We think that the coffee break rule which rests essentially on the theory of constructive control of the employee by the employer during the off-premises activity (Matter of Caporale v. Dept. of Taxation & Finance, 2 A.D.2d 91, 153 N.Y.S.2d 738, affd. 2 N.Y.2d 946, 162 N.Y.S.2d 40, 142 N.E.2d 213) should not be extended to a case where, as here, the employee when injured had deviated from a prescribed sphere of recreational endeavor to embark upon a purely personal mission.

"Decision reversed and claim dismissed, * * *."

In the case at bar, the element of control is absent. The evidence is uncontroverted that not only did the plaintiff's superiors not know where she was but that they did not care. She had the right to go anywhere she wanted to and do what she wanted to do. The only restriction placed upon her was time. When she left the premises of the Highway Department Building, she was on her own.

In the *Balsam* case, supra, "the employee when injured had deviated from a prescribed sphere of recreational endeavor," while the plaintiff, in the instant case, was at a place where she had a right to be. It is contended that the cases are distinguishable because of this fact. We think not, for the *Balsam* case is based on constructive control, and where, as here, an employee had freedom to range anywhere during a coffee break, all control, real or constructive, was relinquished when she left the premises. We agree with the plaintiff that the term "constructive control" as used in *Balsam* would indicate that the employee shall be at an authorized place, or perhaps even one of several authorized places; but to be permitted to go anyplace off the premises negates control when the employee leaves the premises. Particularity and specificity in designating the permitted place gives the employer constructive control. But when the employee is authorized to go anywhere he chooses, and he leaves the premises, the control is temporarily suspended, and he is no longer in the line and scope of his employment.

Our courts have recognized before the importance of control in employer-employee relationships. In Knight Iron & Metal Co. v. Ardis, 29 Ala.App. 600, 199 So. 712, a master and servant case, we find the following statement:

" 'The relationship of agency is created as the result of conduct by the parties manifesting that one of them is willing for the other to act for him subject to his *control*, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on his behalf and subject to his control." (Emphasis added).

See also Wooten v. Roden, 260 Ala. 606, 71 So.2d 802, a workmen's compensation case, wherein we quoted from Auerbach Co. v. Industrial Commission, 113 Utah 347, 195 P.2d 245, as follows:

" '* * * the fundamental test of employer-employee relationship is right of control.' "

The plaintiff cites Harrison v. Densmore, 279 Ala. 190, 183 So.2d 787, and Natco Corp. v. Mallory, 262 Ala. 595, 80 So.2d 274, for her argument that a minor deviation by an employee does not take him outside the line and scope of his employment. Conceding, without deciding, the correctness of the preceding statement, it has no application here, for there was a suspension of the line and scope of employment in the instant case and not a mere deviation. The same distinction holds true for the case of Perkins v. Nashua Mfg. Co., 91 N.H. 211, 16 A.2d 700, also cited by the plaintiff.

The case of Watson v. American Can Co., 23 A.D.2d 423, 261 N.Y.S.2d 306, is clearly different from the one at bar, in that, in Watson, it was clearly within the contemplation of the parties that the employee would have permission on fixed paydays to visit a specific bank, some two blocks away, for the purpose of cashing his payroll check. In fact, the bank, pursuant to an agreement with the employer, increased the number of tellers between the hours of 11:30 A.M. and 1:00 P.M. on fixed paydays to accommodate the employees. Certainly, this was no abandonment of the line and scope of the worker's employment.

The case of Redfield v. Boulevard Gardens Housing Corp., 4 A.D.2d 906, 167 N.Y. S.2d 59, is not applicable, for there, it would

appear that the employer retained at least constructive control over his employee.

In the case at bar, we hold that the employer did not retain control in any form over the plaintiff when the latter left the premises to perform a personal mission not connected with her employment. Her employer's control was temporarily suspended and, therefore, she was not injured in the line and scope of her employment.

A history of the statute, Tit. 23, § 3, Code 1940, as amended, a holding that the policy is a group policy and that its coverage is not limited to that afforded under the Workmen's Compensation law is found in United State Fidelity & Guaranty Co. v. Dunlap, 276 Ala. 616, 165 So.2d 404.

A question as to the amount of damages is raised by the appellant, but we need not consider that in view of our holding.

The judgment is due to be reversed.

Reversed and remanded.

LIVINGSTON, C. J., and SIMPSON and HARWOOD, JJ., concur.