DEPENDENTS OF WILMA P. PACHECO,
Deceased, Claimants-Appellees *v.*
ORCHIDS OF HAWAII, Employer-Appellant
and PACIFIC INSURANCE COMPANY, LTD.,
Insurance Carrier-Appellant

No. 5198

NOVEMBER 8, 1972

RICHARDSON, C. J., MARUMOTO, ABE,
LEVINSON, JJ., AND CIRCUIT JUDGE HAWKINS
IN PLACE OF KOBAYASHI, J., DISQUALIFIED

OPINION OF THE COURT BY RICHARDSON, C.J.

This appeal, pursuant to HRS § 386-88 (Supp. 1971)[1]

---

[1] *Judicial Review.* The decision or order of the appellate board shall be final and conclusive, except as provided in section 386-89, unless

arises out of a workmen's compensation claim by the dependents of Wilma P. Pacheco, deceased, against her employer, Orchids of Hawaii. The claim was denied by the Director of the Department of Labor and Industrial Relations. On appeal, the Labor and Industrial Relations Appeals Board made an award of compensation.

The facts are not in dispute having been stipulated by the parties.

Mrs. Pacheco was employed by Orchids of Hawaii (hereinafter "Employer") on and prior to July 7, 1967. She worked as a member of a production team in an "assembly line" operation.

It was employer's policy to allow a 15-minute coffee break each morning and afternoon during regular working hours. Employees customarily used refreshment facilities on the premises, however, they were free to leave the premises during coffee breaks.

On July 7, 1967 Mrs. Pacheco was given her paycheck after lunch and before the afternoon coffee break. Since it was anticipated that she would work late, the afternoon coffee break afforded Mrs. Pacheco the only opportunity to cash her check before the banks closed. Once previously during her coffee break, Mrs. Pacheco had gone to a bank to cash her paycheck.

At 2:48 P.M. on July 7th, Mrs. Pacheco punched out on her time card to take her afternoon break. With one of three other women employees driving, Mrs. Pacheco left employer's premises intending to cash her paycheck at the nearest bank. Mrs. Yamamoto, Mrs. Pacheco's supervisor, observed the departure and cautioned the group to hurry back.

While the ladies were on their way to the Waiakea branch of the Bank of Hawaii, some three blocks away, their automobile was struck broadside resulting in Mrs. Pacheco's death.

within thirty days after mailing of a certified copy of the decision or order, the director or any other party appeals to the supreme court by filing a written notice of appeal with the appellate board. . . .

The major issue in this case is whether Mrs. Pacheco's death is compensable under section 386-3 of the Hawaii Revised Statutes. The relevant provision of that section reads "[i]f an employee suffers personal injury . . . *by accident arising out of and in the course of the employment*" he or his dependents are entitled to recover under workmen's compensation. (Emphasis added.)

This court has not fully considered the extent of that critical phrase in our workmen's compensation plan, but we are not inclined to unduly restrict its scope.

The stipulated facts present a borderline case which is not adequately covered by existing law.[2] Professor Larson states:

> Now that the coffee break has become a fixture of many kinds of employment, close questions continue to arise on the compensability of injuries occurring off the premises during rest periods or coffee breaks of various durations. It is clear that one cannot announce an all-purpose "coffee break rule," since there are too many variables that could affect the result.[3]

Compensation for off-premises, rest period injuries is appropriate in Professor Larson's view when the employer "can be deemed to have retained authority over the employee."[4] Authority is said to be retained where, measured by the duration of the break and the distance from the employee's desk, the employment itself was not interrupted.[5]

*Bodensky* v. *Royaltone, Inc.,* 5 A.D. 2d 733, 168 N.Y.S.2d 908 (1957) relies on the reasoning in *Caporale* and is persuasive on the issue of whether off-premises,

---

[2]*See* Jordan v. Western Electric Co., Inc., 1 Or. App. 441, 463 P.2d 598, 600 (1970) n. 1 for a representative listing of those cases which allow and those which disallow recovery for injuries occasioned during break time.

[3]1 Larson, Workmen's Compensation Law 245, § 15.54 (1968).

[4]*Id.*, p. 247.

[5]Caporale v. Department of Taxation and Finance, 2 A.D.2d 91, 153 N.Y.S.2d 738 (1956), *aff'd.*, 2 N.Y.2d 946, 142 N.E.2d 213, 162 N.Y.S.2d 40 (1957).

"coffee-break" injuries should be compensable. Royaltone permitted its employees a 15-minute coffee break each day. Claimant's practice of leaving the building during this time was known to her employer and allowed. On returning from a coffee shop about a block away, claimant injured herself. The court based its award of compensation on a finding that the employment was not interrupted because the break was an approved one of limited duration and restricted in scope.

We reject appellant's notion that *Balsam* v. *New York State Division of Employment,* 24 A.D.2d 802, 263 N.Y.S. 2d 849 (1965) is controlling in the present case.

In *Balsam* claimant was injured when she went to a bank to cash a personal check prior to having coffee, but during her rest period. Since employees were free to leave the premises only for coffee at a designated shop, claimant's injury occurred during the course of a "purely personal mission."[6] This deviation from a "prescribed sphere of recreational endeavor"[7] resulted in the dismissal of the claim.

The case at hand does not involve an employee who strayed from an authorized activity, therefore, we find *Balsam* inapposite.

We adopt as a general rule the proposition that an employee, who is allowed to venture off-premises during an authorized work break, and who is injured in the course of reasonable and necessary activity incidental to such break, should be compensated.

A scheduled coffee break serves the dual function of providing an employee à brief respite from his job as well as affording him an opportunity to tend to matters of a personal nature. The former objective has been viewed as a benefit to the employer, because a refreshed employee is often a more productive one. The latter type

---

[6]Balsam v. New York State Division of Employment, 24 A.D.2d 802, 263 N.Y.S.2d 849, 850 (1965).
[7]*Id.*

of activity may or may not directly benefit the employer, but is allowed as a convenience to the employee. An employer may derive substantial benefits from an employee who is allowed time away from the job to accomplish pressing personal business. Injuries occasioned by employees pursuing necessary personal matters off employer's premises are compensable in our view as work-connected, especially if the employer acquiesces in such practices.

Applying the above principles to the present case we find that there is substantial evidence to support a claim for compensation.

Deceased was observing her regular afternoon coffee break when the fatal accident occurred. It was her employer's policy to allow *ex premises* departures during the break for the convenience of the employees. Once previously, deceased had ventured out to cash her paycheck without censure. On the day of the accident, deceased was among a group of employees which was observed departing for the bank by a supervisor. Since late work beyond banking hours was anticipated, it was necessary for deceased to use her free time to cash her paycheck. A substantial benefit accrued to the employer because his production line closed down simultaneously rather than sporadically throughout the workday. The regularly scheduled break promoted a smooth-running, efficient operation.

Based on the foregoing, we affirm the award of the Labor and Industrial Relations Appeals Board, and find it unnecessary to consider whether the Board abused the authority vested in it by HRS § 91-10 (1) .[8]

*Wilbur K. Watkins, Jr.,* for employer-appellant.

*Stanley H. Roehrig* for claimants-appellees.

---

[8] In relevant part HRS § 91-10 (1) states that "no . . . order [shall] be issued except upon consideration of the whole record or such portions thereof as may be cited by any party and as supported by and in accordance with the reliable, probative, and substantial evidence."

DISSENTING OPINION OF LEVINSON, J.,
WITH WHOM MARUMOTO, J., JOINS

This case is before us upon stipulated facts and presents a question of first impression under Hawaii's Workmen's Compensation Law.[1] The question is whether an employee who is injured off the employer's premises during an unpaid coffee break but while en route to a bank to cash a paycheck has suffered an injury "arising out of and in the course of employment." A majority of this court is of the opinion that compensation should be awarded. It reasons that "an employee, who is allowed to venture off-premises during an authorized work break, and who is injured in the course of reasonable and necessary activity incidental to such break should be compensated." In my view, neither the result reached nor the reasoning adopted to support it can be justified under present authority or sound public policy. I dissent.

The facts as stipulated in their entirety are as follows:

Mrs. Wilma P. Pacheco was employed by Orchids of Hawaii (hereinafter "Employer") on and prior to July 7, 1967. Mrs. Pacheco worked in the production division of Employer's premises fronting on Hinano Street in Hilo. She worked as a member of a production team, at a table with several other ladies, in an "assembly line" type of situation.

It was Employer's policy to allow a 15 minute coffee break each morning and afternoon during regular working hours. Refreshment facilities were available on Employer's premises and were customarily used by the employees.

On July 7, 1967 at 2:48 p.m. Mrs. Pacheco punched out on her time card as was done by all employees,

---

[1]The relevant provision, HRS § 386-3, provides in pertinent part as follows:

*Injuries covered.* If an employee suffers personal injury either by accident arising out of and in the course of the employment or by disease proximately caused by or resulting from the nature of the employment, his employer or the special compensation fund shall pay compensation to the employee or his dependents as hereinafter provided.

to take her afternoon 15 minute coffee break. Shortly thereafter she and three other women employees, who had similarly punched out on the coffee break, left Employer's premises together in an employee's car driven by one of the three other ladies.

All four ladies were on their own time during the coffee break. Mrs. Yamamoto, Mrs. Pacheco's supervisor, apparently worried about the four ladies being tardy and delaying production, requested that they hurry back when she saw them walking out of the production area to the car.

After traveling about four-tenths (4/10) of a mile on the public highway, while the four ladies were on their way to the Waiakea Branch of the Bank of Hawaii (the nearest bank, which was three blocks away) to cash their paychecks (which were given to them after lunch and before the afternoon coffee break), the car was struck broadside by another vehicle at the intersection of Hinano and Lanikaula Streets.

Mrs. Pacheco received fatal injuries in the collision and died shortly thereafter.

Mrs. Pacheco had made one other such trip previously to a bank to cash her paycheck during a similar coffee break.

Employees could leave Employer's premises during the coffee breaks whenever an employee so desired, even though there were no nearby refreshment establishment or other facilities. On the day of the fatal injury, it was anticipated that the deceased would work late so the afternoon coffee break was the only opportunity deceased had to cash her check before the bank closed.

## I.

In order to focus on the precise issue presented by

this record, it is useful first to canvass those matters which this case does not involve.

At the time of the accident, Mrs. Pacheco was quite clearly neither on the premises nor under the control of her employer. She was, instead, on her own time in the company of three other employees, each having no managerial responsibilities, cf. *Jordan* v. *Western Electric Co.*, 1 Or. App. 441, 463 P.2d 598 (1970), in an automobile four-tenths of a mile away from her employer's premises, cf. *Marsigli's Estate* v. *Granite City Auto Sales, Inc.*, 124 Vt. 95, 197 A.2d 799 (1964); *Dyer* v. *Sears, Roebuck & Co.*, 350 Mich. 92, 85 N.W.2d 152 (1957). Nor was Mrs. Pacheco, in my view, under the constructive control of her employer. *Cf. Caporale* v. *Department of Taxation and Finance*, 2 App. Div. 2d 91, 153 N.Y.S.2d 738 (1956), *aff'd* 2 N.Y.2d 946, 142 N.E.2d 213, 162 N.Y.S.2d 40 (1957). *See Glens Falls Insurance Co. of Glens Falls, New York* v. *Anderson*, 280 Ala. 626, 197 So. 2d 276 (1967); *Balsam* v. *New York State Division of Employment*, 24 App. Div. 2d 802, 263 N.Y.S.2d 849 (1965). When she left her employer's premises, the only restriction placed upon her was time. She could go wherever she pleased and do whatever she wanted as long as she returned to work in 15 minutes. If Mrs. Pacheco is deemed to have been under the constructive control of the employer merely because her time was restricted, then any activity in which she might have engaged while off premises during the period of the coffee break also must be deemed to have been under the employer's control. In none of the reported cases has the element of control ever been stretched so far.

There is nothing in the facts, all of which were stipulated, indicating that the employer had any knowledge, either actual or constructive, of Mrs. Pacheco's intent to cash her paycheck during the coffee break. Absent such knowledge, it cannot be said that the employer acquiesced in her activity, cf. *Jordan* v. *Western Electric Co., supra;*

*Redfield* v. *Boulevard Gardens Housing Corp.*, 4 App. Div. 2d 906, 167 N.Y.S.2d 59 (1957). Under the stipulation, there is no indication that the employer was aware of the fact that Mrs. Pacheco left the premises for the purpose of cashing her paycheck or that she had ever done so previously. She did, in fact, do so on one previous occasion, but we cannot assume that her employer had knowledge of it. Mrs. Pacheco's supervisor may have guessed at the purpose of the off-premises jaunt, but that is mere speculation.

Although Mrs. Pacheco was required to work later than usual, her trip to the bank was at most convenient to her personally and had nothing to do with her ability to work late. Check cashing was certainly not one of her duties as an employee, *cf. Bice* v. *Anderson,* 52 Wash. 2d 259, 324 P.2d 1067 (1958); *Oram* v. *Byron G. Moon Co.,* 285 N.Y. 42, 32 N.E.2d 785 (1941). *See Sam Jones Casing Crews* v. *Dependents of Skipper,* 199 So. 2d 436 (Miss. 1967); *Tompkins* v. *George Rinner Construction Co.,* 194 Kan. 278, 398 P.2d 578 (1965).

Nor can it be said that the employer derived a benefit from the activity. *See Kunce* v. *Junge Baking Co.,* 432 S.W.2d 602 (Mo. Ct. App. 1968). *See also Hegwood* v. *Pittman,* 471 P.2d 888 (Okla. 1970). The paycheck could have been cashed at some other time and place. Since Mrs. Pacheco anticipated working late, it may have been more convenient for her to cash it during her coffee break. But this was merely a matter of personal convenience unrelated to her work. At most it was intended to save her some inconvenience after work. *Cf.* Comment, *"Workmen's Compensation: The Personal Comfort Doctrine,"* 1960 Wis. L. Rev. 91. Mrs. Pacheco, for example, did not attempt to go to the bank so that she could pay for a meal while at work, or purchase some article essential to her employment.

The answer to the argument that cashing a check for her personal convenience only is sufficient to render an

employer responsible for compensation is that it then would follow that injuries arising out of any activity that might conceivably make employment more convenient for the employee also would be compensable. The connection between an employee's personal convenience and the employment is too tenuous to justify compensation. There is a logical distinction, I believe, between the circumstances under which an employee takes a breath of fresh air, smokes a cigarette, uses the bathroom or talks to another employee, *see* 1 LARSON, THE LAW OF WORKMEN'S COMPENSATION § 21 (1965), and those circumstances under which he goes to a bank to cash his paycheck, *Balsam* v. *New York State Division of Employment, supra,* takes an airplane ride, *Indrebo* v. *Industrial Commission,* 209 Wis. 272, 243 N.W. 464 (1932), or goes shopping at a grocery store for his family, *Tompkins* v. *George Rinner Construction Co., supra.*

If Mrs. Pacheco had not engaged in the activity that led to her accident, she might have been anxious about having cash with which to purchase commodities or entertainment for her family. No doubt her anxiety would in some sense affect her while she was at work. But if the avoidance of such anxiety is considered, apart from mere personal convenience, to be of such benefit to the employer so as to render the latter responsible for injuries resulting from employee activities which relieve such anxiety, then with equal force practically any activity engaged in by an employee benefits the employer, whether engaged in during working or leisure hours. Compensation based on anxiety is even more tenuous than compensation based on personal convenience unrelated to work. It is unheard of in the reported cases.

Finally, the check cashing activity was not in accordance with custom, *cf. Redfield* v. *Boulevard Gardens Housing Corp., supra; Motto* v. *Cosmopolitan Tourist Co.,* 278 App. Div. 597, 101 N.Y.S.2d 873 (1951), pursuant to any special arrangement between the employer

and the bank, *cf. Flamholtz* v. *Byrde, Richards & Pound, Inc.,* 37 App. Div. 2d 645, 322 N.Y.S.2d 382 (1971); *Watson* v. *American Can Co.,* 23 App. Div. 2d 423, 261 N.Y.S.2d 306 (1965), *aff'd* 18 N.Y.2d 758 (1966), or engaged in by Mrs. Pacheco while she was subject to call, *cf. Whitehurst* v. *Rainbo Baking Co.,* 70 N.M. 468, 374 P.2d 849 (1962). The stipulation is silent with respect to any custom or special arrangement and it would be improper to assume their existence. With respect to the possibility of Mrs. Pacheco's being subject to call, the stipulation is precisely to the contrary. Mrs. Pacheco was free to do as she pleased during her coffee break and upon leaving her employer's premises she was restricted only in the time in which she could achieve her check cashing purpose. In view of the fact that on the day of the accident delay in production was a matter of concern, it is significant that Mrs. Pacheco's supervisor merely admonished a hasty return. If Mrs. Pacheco was subject to call, her supervisor certainly would have ordered her to remain on the premises.

## II.

Flushed against this background the issue is reduced to the question whether an injury is compensable merely because it occurred during an authorized coffee break. Apart from this time element, the check cashing activity had nothing to do with employment under present authority.

I would have thought that there would be little doubt that an injury occurring during a coffee break, without more, would not be compensable. The majority, however, indicates a contrary view. No authority is cited, and no authority exists, to support that conclusion.

Recovery under Hawaii's Workmen's Compensation Law is limited, as it is in most jurisdictions, to injuries "arising out of and in the course of employment." Since workmen's compensation never was and is not yet a na-

tional accident insurance program with the employer paying the premiums, this coverage formula sets the limits within which compensation can be obtained.

The precise meaning of the statutory language is far from clear.[2] Cases in other jurisdictions are confused and confusing. There are, however, essentially two views. Under the prevailing and traditional view, the injury must occur within the time and space limits of and must be caused by the employment. *See* Horovitz, *"Workmen's Compensation: Half Century of Judicial Developments,"* 41 Neb. L. Rev. 1 (1961). Both requirements must be met before compensation will be awarded. *Ward & Gow* v. *Krinsky,* 259 U.S. 503 (1922). Under the other and, perhaps, more liberal view, an injury "arises out of and in the course of employment" if the injury is "work connected." *See* 1 Larson, *supra* at § 29 (1965); *Northern Corporation* v. *Saari,* 409 P.2d 845 (Alaska 1966). In effect, the unitary concept of work connection serves as the focus of inquiry in place of the more cumbersome duality of the traditional construction. If the injury can be said to be connected with any of the "incidents of employment," then the injury is deemed to "arise out of and in the course of employment."

Under either view, however, there must be a connection between the injury and employment. Thus, while there is some disagreement in the cases and among commentators as to whether the concept is dual or unitary, it is agreed that the purpose of the coverage formula is to connect, in some way, the injury to the employment.

In this context, the majority assumes that employment continues during the period of time included in a work or coffee break. *See* 1 Larson, *supra* at § 15.54; Johnson, *"Workmen's Compensation and the Coffee Break: An Adjustment in the Law,"* 4 Ariz. L. Rev. 93 (1962). Granting this assumption, it does not follow,

---

[2] *See generally* Horovitz, *"The Litigious Phrase: 'Arising Out of' Employment,"* 3 NACCA L.J. 15 (1949); Note, *"Workmen's Compensation — Arising Out of and in the Course of an Enigma,* 9 U. Fla. L. Rev. 311 (1956).

however, that an injury arising out of any activity incidental to such a break is compensable merely because it occurs during break time. Compensation depends not upon the relation of an individual's activities in a certain space of time, but the relationship of an event to an employment.

In response to this, the majority argues, in effect, that a coffee break is an incident of employment, and that since check cashing is, in turn, a reasonable and necessary incident of a coffee break an injury arising out of a coincidence of the two activities "arises out of and in the course of employment." Like the house that Jack built, we are told that an injury that "arises out of and in the course of" an incident of an incident of employment is compensable. Hence, the injury is compensable not only because it occurred during a coffee break but also because it arose out of an activity incidental to it.

While the line may be hard to draw between what is or is not compensable, there is, in my view, a difference between employment itself, an incident of employment and an incident of an incident of employment. Assuming that the majority is correct in its assertion that a coffee break is an incident of employment and that check cashing is a reasonable and necessary incident of a coffee break, still, the two activities are not merged into a single incident of employment, coffee breaks, or into employment itself merely by the stroke of a pen or a vote cast in favor of compensation. Coffee breaks are considered, if at all, incidents of employment not only because of the short interval between the time work is stopped and the time it is resumed but also because:

> The drinking of coffee and similar beverages, or the eating of a snack . . . during recognized breaks in the daily work hours is now so generally accepted in the industrial life of our Nation as to constitute a work-related activity falling into a general class of activities closely related to personal ministrations so that engag-

ing in such activity does not take an employee out of the course of his employment. *In re Helen F. Gunderson,* Docket No. 54-36, U.S. Dep't of Labor, Employees' Compensation Appeals Board, April 13, 1955, quoted in 1 Larson, *supra* at 245 n.18 (1965).

Coffee breaks are not part of employment itself; they are incidents of employment. They are incidents of employment because the activity and not the time in which the activity engaged in is incidental to employment. The reason for the rule, that the drinking of coffee or relaxing is closely related to employment, defines and limits its reach. Drinking coffee or relaxing during a coffee break is itself one step removed from employment. A trip to a bank to cash a paycheck during a coffee break is still another step removed.[3] In my view, a line must be drawn at this point.

There is, I believe, a clear distinction between injuries that arise out of activities that are directly related to the primary purpose of a coffee break and injuries that arise out of activities that are merely incidental to it. *See Young* v. *Department of Labor and Industries,* 200 Wash. 138, 93 P.2d 337 (1939). Check cashing is an activity falling in the latter and not the former category and is therefore without the coverage of workmen's compensation.

This distinction is supported by all the reported cases in which an injury occurred during a coffee break. In those cases in which compensation was awarded, the employee was injured while actually drinking coffee, *e.g., Jones* v. *Bendix Corporation,* 407 S.W.2d 650 (Kansas City Ct. App. 1966) ; *United States Fidelity & Guaranty Co.* v. *Croft,* 93 Ga. App. 114, 91 S.E.2d 110 (1955), in a place where he intended to drink coffee, *e.g., Jones* v. *Bendix Corporation, supra; Western Greyhound Lines*

---

[3]I cannot accept the employer's suggestion that Mrs. Pacheco's check cashing activity constitutes a form of relaxation. In my view, such activity is precisely the opposite of relaxation.

v. *Industrial·Accident Commission*, 225 Cal. App. 2d 517, 37 Cal. Rptr. 580 (D.C.A. Calif. 1964), or en route to or from such a place, *e.g.*, *Caporale* v. *Department of Taxation and Finance, supra*. But in those cases in which compensation was denied, the employee was injured while pursuing some other activity unrelated to the drinking of coffee or relaxation. *See, e.g., Glens Falls Insurance Co. of Glens Falls, New York* v. *Anderson, supra*.

Contrary to the view expressed by the majority, therefore, I am of the opinion that *Balsam* v. *New York State Division of Employment, supra*, is directly in point. In leaving her employer's premises for the purpose of cashing her paycheck, Mrs. Pacheco departed from a "prescribed sphere of recreational endeavor."

The distinction is also supported by sound public policy. The broad sweep of the reasoning adopted by the majority will lead, in my view, to the restriction of activities in which employees will be allowed to engage during coffee breaks. In order to avoid liability, or, more precisely, an increase in premiums, employers will restrict authorized activities. Employees are not machines to be limited to such a narrow gauge. As a matter of policy, employees should be free to do as they please during coffee breaks; provided, however, that the employer is responsible only for injuries that are directly related to the primary purpose of the coffee break. If this court is unwilling to draw the line at that point, the employer will draw the line himself, at the expense of the employee.

### III.

In awarding compensation in this case, the court sets itself adrift in this area without chart or compass. I fail to see any logical distinction between check cashing and activities that are directly related either in purpose or reason to check cashing, such as shopping for groceries, *Tompkins* v. *George Rinner Construction Co., supra,* or

purchasing Christmas tree decorations, *Kunce* v. *Junge Baking Co., supra.* Each is equally incidental, reasonable and necessary, if at all, to a coffee break. Where would the majority draw the line? Would it include sky diving or drag racing under circumstances where it is lawful and does not exceed the time allowed for a coffee break? The risk of injury involved in all of these activities is clearly distinguishable from the risk incident to using a coffee break for the primary purpose for which it was intended, the drinking of coffee and relaxation. In pondering the various fact situations that will arise following this case, the majority would do well to consider the following oft-quoted passage from *The Voyages of Sinbad the Sailor:*

> And, lo, the master of the ship vociferated and called out, threw down his turban, slapped his face, plucked his beard, and fell down in the hold of the ship by reason of the violence of his grief and rage. So all the merchants and other passengers came together to him and said to him, "O master, what is the matter?" and he answered them: "Know, O Company, that we have wandered from our course, having passed forth from the sea in which we were, and entered a sea of which we know not the routes."

I would reverse the Decision and Order of the Labor and Industrial Relations Appeals Board and dismiss the claim.